BRUGGERS v. EASTMAN KODAK CO., et al., 2000 NCBC 3

STATE OF NORTH CAROLINA       GENERAL COURT OF JUSTICE
**SUPERIOR COURT DIVISION**
**WAKE COUNTY**                **97-CVS-11278**

| | | |
|---|---|---|
| KAREN BRUGGERS, D.D.S., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | ORDER AND OPINION |
| EASTMAN KODAK COMPANY, | ) | |
| E.I. DUPONT DE NEMOURS & CO., | ) | |
| BAYER CORPORATION and FUJI | ) | |
| MEDICAL SYSTEMS U.S.A., INC., | ) | |
| | ) | |
| Defendants. | ) | |

{1}    This matter is before the Court on defendant Eastman Kodak Company's motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure.[fn1]  For reasons set forth below, it appears to the Court that the complaint states a cause of action for which relief can be granted.  In so holding, the Court determines as a matter of law that indirect purchasers have standing to sue under N.C.G.S. § 75-16.  Therefore, the defendant's motion to dismiss is DENIED.

*The Blount Law Firm, P.L.L.C., by Marvin K. Blount, Jr.; Leibenberg & White, by Roberta D. Liebenberg and Robert G. Eisler; Frank & Rosen, by Alan L. Frank and David T. Shulick; Leiff, Cabraser, Heimann & Bernstein, by Joseph R. Saveri; Levin, Fishbein, Sedran & Berman, by Howard Sedran; and Hoffman & Edelson, by Marc Edelson, for Plaintiff Karen Bruggers, D.D.S.*

*Nigle B. Barrow, Jr.; and Pitney, Harden, Kipp & Szuch, by Clyde A. Szuch and Murray J. Laulicht, for Defendant Bayer Corporation.*

*Smith, Helms, Mulliss & Moore, L.L.P., by James L. Gale and Matthew W. Sawchak; and Jones, Day, Reavis & Pogue, by Thomas Demitrack and Deborah P. Herman, for Defendant FUJI Medical Systems, U.S.A., Inc.*

*Womble Carlyle Sandridge & Rice, by Pressly M. Millen; and Hallenbeck, Lascell, Norris & Heller, by David M. Lascell, for Defendant Eastman Kodak Company.*

*Parker, Poe, Adams & Bernstein L.L.P., by John F. Graybeal; and Crowell & Moring L.L.P., by George D. Ruttinger and David M. Schnorrenberg, for Defendant E.I. DuPont de Nemours & Co.*

**I.**

{2}    When ruling on a motion to dismiss under Rule 12(b)(6), the court must determine "whether, as a matter of law, the allegations of the complaint . . . are sufficient to state a claim upon which relief may be granted."  *Harris v. NCNB*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987).  In ruling on a motion to dismiss, the court must treat the allegations in the complaint as true.  *See Hyde v. Abbott Laboratories, Inc.*, 123 N.C. App. 572, 473 S.E.2d 680, 682 (1996).  The court must construe the complaint liberally and must not dismiss the complaint unless it appears to a legal certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim.  *See id.*  Kodak's motion raises the narrow, but significant, legal issue of whether indirect purchasers have standing to sue under North Carolina's antitrust laws.

**II.**

{3}    Plaintiff brings this class action against the manufacturers of medical x-ray film, claiming they agreed or conspired to raise and then fix prices.  Although the class has not yet been certified, plaintiff's amended complaint defines the class as "[a]ll persons and entities (excluding defendants, their co-conspirators, their parents, subsidiaries and affiliates, and all government entities) that indirectly purchased medical x-ray film within the state of North Carolina produced by any defendant or co-conspirator between 1989 and 1994." (Amend. Compl. ¶19.)  The class of indirect purchasers in this action could conceivably include dentists and other health care providers, hospitals, insurance companies, and patients.  Plaintiff, a dentist, is an indirect purchaser of medical x-ray film.  Plaintiff alleges that during the relevant time period, defendants were the major producers and sellers of medical x-ray film throughout the United States.  Defendants sold medical x-ray film to distributors, who, in turn, sold the

film to members of the proposed class.

{4}     Plaintiff's complaint sets forth claims of fraudulent concealment and restraint of trade or commerce in violation of North Carolina's antitrust law, N.C.G.S. § 75-16.  Defendant brings this motion to dismiss on the grounds that plaintiff was an indirect purchaser and therefore has no standing to bring an action against defendant for antitrust violations.  Plaintiff admits she was an indirect purchaser and relies on the holding in *Hyde v. Abbott Laboratories, Inc.*, 123 N.C. App. 572, 473 S.E.2d 680 (1996), to support her standing to sue under state antitrust laws.  Eastman Kodak contends that the issue of indirect purchaser standing has not been definitively resolved by the North Carolina Supreme Court and that the state of North Carolina would not recognize indirect purchaser standing under its antitrust laws. (Def.'s Mem. Supp. Dismiss at 8-11, 18-19.)  The majority of states follow the federal rule and do not permit indirect purchaser standing, either by statute or case precedent.  *See Stifflear v. Bristol-Myers Squibb Co.*, 931 P.2d 471 (Colo. Ct. App. 1996); *Abbott Labs. v. Segura*, 907 S.W.2d 503 (Tex. 1995); *Blewett v. Abbott Labs.*, 938 P.2d 842 (Wash. Ct. App. 1995).

{5}     The *Hyde* decision is the only North Carolina appellate decision dealing with indirect purchaser standing.  That case was settled after the Court of Appeal's decision and before review by the North Carolina Supreme Court.  In *Hyde*, plaintiffs filed a class action against manufacturers of infant formula, alleging violations of North Carolina's antitrust laws.  123 N.C. App. at 573, 473 S.E.2d at 681.  The purported class consisted of ultimate consumers who purchased infant formula from parties other than the manufacturer.  *Id.* at 574, 473 S.E.2d at 681-82.  The defendants filed a motion to dismiss alleging that plaintiffs were indirect purchasers and therefore lacked standing to sue under N.C.G.S. § 75-16.  *Id.*  The Superior Court granted the motion to dismiss, and plaintiffs appealed.  *Id.*

{6}     The Court of Appeals reversed the Superior Court and found that under North Carolina's antitrust statute, an indirect purchaser may sue a manufacturer for antitrust violations.  The Court of Appeals based this finding upon a review of the plain language of N.C.G.S. § 75-16.  North Carolina's antitrust statute provides:

If any person shall be injured or the business of any person, firm or corporation shall be broken up, destroyed, or injured by reason of any act or thing done by any other person, firm or corporation in violation of the provisions of this Chapter, such person, firm or corporation so injured shall have a right of action on account of such injury done, and if damages are assessed in such case judgment shall be rendered in favor of the plaintiff and against the defendant for treble the amount fixed by the verdict.

N.C.G.S. § 75-16 (1999).

{7}     The current version of N.C.G.S. § 75-16 was amended in 1969.  Prior to the amendment, the first sentence of the provision began:  "If the business of any person, firm, or corporation shall be broken up . . . ."  1913 N.C. Sess. L. 66, 70.  The *Hyde* court found it significant that, in amending the statute, the legislature decided to add the phrase "if *any person* shall be injured" to the beginning of the provision.  123 N.C. App. at 578, 473 S.E.2d at 684.  The court found that this evidenced an intent to expand the class of persons with standing to sue under Chapter 75, and thus provide a recovery "for all consumers," including indirect purchasers.  *Id.* at 577-78, 473 S.E.2d at 684.  A review of the legislative history also leads to the conclusion that the General Assembly intended to create indirect purchaser standing to sue under the state antitrust laws when it amended the statute.  There is simply no logical reason for the amendment other than the creation of indirect purchaser standing.

{8}     In holding that indirect purchasers have standing to sue under North Carolina antitrust law, the Court of Appeals specifically declined to interpret the statute consistent with federal antitrust law.  As originally enacted in 1913, the North Carolina antitrust statute was modeled after federal antitrust law, codified as Section 7 of the Sherman Act.  *See* An Act to Declare Illegal Trusts and Combinations in Restraint of Trade, Ch. 41, § 14, 1913 Sess. Laws 66.  Section 7 of the Sherman Act was recodified as Section 4 of the Clayton Act.  Both federal and state law have been amended throughout the years; however, the language of the North Carolina statute has remained similar to the language of the Clayton Act.  Section 4 of the Clayton Act provides that:

any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee.

**15 U.S.C. § 15(a) (1999).**

{9}     Section 4 of the Clayton Act and N.C.G.S. § 75-16 both confer standing upon persons who are injured as a result of a violation of the statute.  Thus, the central question in antitrust actions is whether the plaintiff suffered any legally cognizable injury.  In 1968, the Supreme Court of the United States rejected a defense to an antitrust claim based on the theory that plaintiff suffered no injury because the illegal overcharge was passed on to plaintiff's customers.  *See Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481 (1968).  This holding allowed direct purchasers to enforce federal antitrust laws regardless of whether they absorbed or passed on the overcharge.  Almost ten years later, the Supreme Court relied on the rationale of *Hanover Shoe* to support its holding that an indirect purchaser may not use a pass-on theory offensively in an action against an alleged violator of federal antitrust law.  *See Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977).  Therefore, under federal law, because indirect purchasers cannot establish a legally cognizable injury, only direct purchasers may pursue an overcharge claim arising from an antitrust violation.

{10}    In this case, defendant argues that the Court of Appeals in *Hyde* was incorrect in interpreting N.C.G.S. § 75-16 to confer standing upon indirect purchasers. Defendants asserts that the interpretation of federal antitrust statutes by the federal courts should guide the interpretation of the North Carolina antitrust statute. Defendant points to cases in which the North Carolina Supreme Court has looked to federal precedent in construing the scope of N.C.G.S. § 75-1. *See Madison Cablevision, Inc. v. City of Morganton*, 325 N.C. 634, 386 S.E.2d 200 (1989); *Skinner v. E.F. Hutton & Co.*, 314 N.C. 267, 333 S.E.2d 236 (1985); *Rose v. Vulcan Materials Co.*, 282 N.C. 643, 194 S.E.2d 521 (1973).

{11}    While the Court of Appeals in *Hyde* recognized that federal antitrust precedent is persuasive authority, it noted that it was not <u>required</u> to construe North Carolina law in harmony with the federal law. 123 N.C. App. at 582, 473 S.E.2d at 686. The court emphasized that the *Illinois Brick* decision came eight years after the North Carolina legislature amended N.C.G.S. § 75-16. Thus, according to the Court of Appeals, the legislature could not have intended to adopt a construction of the statute consistent with *Illinois Brick*. Instead, the Court of Appeals "considered as persuasive authority federal cases interpreting the federal antitrust laws as they existed in 1969." *Id.* at 578, 473 S.E.2d at 684. In doing so, it reviewed federal case law decided between 1968 (the year *Hanover Shoe* was decided) and 1977 (the year *Illinois Brick* was decided). This review led the Court of Appeals to the conclusion that "[p]rior to the United States Supreme Court's decision in *Illinois Brick*, most federal circuit courts construed Section 4 of the Clayton Act to allow suits by indirect purchasers." *Id.* at 579, 473 S.E.2d at 685.

{12}    Defendant argues that the *Hyde* court's analysis of federal precedent was flawed. First, defendant points to cases in which the North Carolina Supreme Court did not hesitate to interpret state antitrust law in light of subsequently decided federal precedent. *See Madison Cablevision, Inc.*, 325 N.C. 634, 386 S.E.2d 200; *Skinner*, 314 N.C. 267, 333 S.E.2d 236; *Rose*, 282 N.C. 643, 194 S.E.2d 521. Furthermore, because *Illinois Brick* was based upon the holding in *Hanover Shoe*, which was decided prior to the amendment of the North Carolina statute, defendant argues that the Court of Appeals should have placed more weight on the *Illinois Brick* decision.

{13}    In addition, the defendant argues that the *Hyde* court did not give due attention to the problems with indirect purchaser standing. The *Illinois Brick* Court found that allowing offensive but not defensive use of a pass-on theory would create three primary concerns for the courts: (1) risk of multiple liability; (2) difficulty in apportioning the responsibility for the overcharge among those in the chain of distribution; and (3) lack of incentive for the direct purchaser to sue. The North Carolina Court of Appeals found that the concerns identified in *Illinois Brick* were "less worrisome" under the facts in *Hyde*. 123 N.C. App. at 582, 473 S.E.2d at 687. The *Hyde* court dismissed the problem of multiple liability, stating that "there are few, if any, reported instances of a defendant paying treble damages to two different classes of purchasers based on a single antitrust violation." 123 N.C. App. at 583, 473 S.E.2d at 687.[fn2] Second, the *Hyde* court found that granting indirect purchaser standing under state law would not create a disincentive for direct purchasers to sue under federal law. *Id.* In fact, a defendant could face liability under both federal and state law. Therefore, allowing indirect purchaser standing creates an incentive to sue for violation of North Carolina antitrust law. *Id.* Finally, while the Court of Appeals acknowledged the complexities created by indirect purchaser standing, it refused to deny indirect purchaser standing based on a hypothetical problem it found did not exist in that case. *Id.*

{14}    In contrast, Kodak asserts that the problems with indirect purchaser standing identified in *Illinois Brick* are present in this case. The Court agrees with that assessment. First, this case clearly presents the difficult issue of apportioning the overcharges. Putative class members suffered injury only to the extent that there was an overcharge to distributors, that any such overcharge was passed on to indirect purchasers, and that the indirect purchasers absorbed the overcharge rather than passing it on to someone else in the distribution chain or to the ultimate consumer. The distributors may or may not have passed the overcharge along. They may have passed the overcharge to some customers and not to others, depending on the customer's buying power. Unlike the plaintiff in *Hyde*, the plaintiff here was not the ultimate consumer. Plaintiff and other putative class members may have passed on some or all of the alleged overcharge to their patients or to third party payers. Additional complexity is created by the fact that the plaintiff in this case used the product in connection with the provision of services which vary in cost, thus making it even more difficult to determine who bore the injury of any alleged overcharge. Accordingly, a substantial number of subclasses may be required in this case as well as in other indirect purchaser cases.[fn3]

{15}    The risks of complicated proof and apportionment in this case are not merely hypothetical as they were in *Hyde*. In the related federal litigation, *In re Medical X-Ray Film Antitrust Litigation*, the direct purchasers claimed that they were injured by the alleged overcharges. The direct purchasers recovered through settlement. *See In re Medical X-Ray Film Antitrust Litigation*, No. 93 Civ. 5904 (E.D.N.Y. Aug. 7, 1998). Now, in this case, the indirect purchasers are claiming that the overcharge was passed on to them, thus presenting the Court with the problem of allocating damages, when in another action the direct purchaser recovered against the manufacturers by claiming that they absorbed the overcharge. This situation directly raises the issue of multiple liability, which did not arise in *Hyde*. Defendant, having settled the federal action brought by direct purchasers, now faces liability for the same alleged wrongdoing. This risk of multiple liability is precisely why federal courts and a majority of state courts have declined to grant indirect purchaser standing. In addition, defendant argues that allowing indirect purchaser standing in this case adds little if anything to the deterrence value of the North Carolina antitrust statute as evidenced by the federal direct purchaser action in which the defendants settled, knowing they had no pass-through defense.

{16}    This Court believes that there may be a distinction between those cases in which the plaintiff class consists solely of indirect purchasers who were the ultimate consumers and those cases in which the plaintiff class consists of various purchasers in a distribution chain. A case in which a plaintiff class of purchasers consists of only ultimate consumers and the cost increase in a consumer product is clearly passed through to the ultimate consumer may not pose complex apportionment issues. Therefore, the facts in *Hyde* are distinguishable from the facts in the present case.

{17}    However, this Court finds no language in *Hyde* which would indicate that the Court of Appeals intended to carve out a narrow exception for indirect purchasers who where ultimate consumers. Instead, this Court reads *Hyde* to grant indirect purchasers standing, thus creating a private

cause of action for all purchasers in the distribution chain. This Court does not have the authority to grant defendant's motion to dismiss if doing so would be in direct conflict with governing case law. This Court may not base its decision upon a determination that the *Hyde* case was wrongly decided. Accordingly, defendant's motion to dismiss is denied.

## III.

{18} The existence of indirect purchaser standing spawns additional significant issues which have never been addressed by the appellate courts or the General Assembly. Those issues are not before the Court on this motion. However, the Court notes several questions that will need to be resolved in indirect purchaser cases.

{19} For example, are defendants in indirect purchaser cases permitted to establish that any increased costs were not passed through to plaintiff? In this case, distributors have already recovered in settlement, presumably because they did not pass on the alleged increase in price resulting from the alleged price fixing. Is that recovery admissible in evidence? The rationale of *Hanover Shoe* and *Illinois Brick* would dictate that if plaintiffs are required to prove the pass-on, defendants may offer evidence of no pass-through in rebuttal.

{20} Similarly, who bears the burden of proof on the pass-through issue? Must a plaintiff prove the pass-through to them or their class or subclass? Must defendants then prove that the specific plaintiff passed the increased costs on to someone further down in the chain or must the plaintiff show that the plaintiff absorbed the cost?

{21} If the question of allocation of the alleged increase along the chain of distribution creates conflicts among potential plaintiffs, is the Court required to create subclasses to deal with the potential conflicts? Do the issues become so individualized or the individual damages so fragmented and small that class action treatment is inappropriate?

{22} What proof will proposed class members have to establish with respect to the origin of the film they consumed or paid for? The alleged co-conspirators have settled.[fn4] Must each class member show that he paid too much for Kodak film and how much or may purchasers of Fuji film recover from Kodak because of the alleged conspiracy?

{23} All of these thorny issues are eliminated by the federal approach but cannot be avoided if indirect purchaser standing exists. These issues, along with the central issue of indirect purchaser standing, significantly affect the public interest and involve legal principles of major significance to the jurisprudence of the state which have not been addressed by the North Carolina Supreme Court.

## Conclusion

{24} The decision of the Court of Appeals in the *Hyde* case is controlling authority in this state on the question of indirect purchaser standing under N.C.G.S. § 75-16. It is difficult to interpret the language of the 1969 amendment to the statute as doing anything other than establishing indirect purchaser standing. However, this case raises the specific issues of concern to the United States Supreme Court in *Illinois Brick*. The General Assembly, in amending the statute, did not provide any statutory guidance on how to deal with apportionment and pass-through issues or multiple liability questions. There is no guidance in the appellate decisions because those issues were not before the court in *Hyde*. The courts must address those issues if indirect purchaser standing exists in North Carolina.

{25} Wherefore, it is hereby Ordered that Defendant Eastman Kodak Company's Motion to Dismiss is denied.

This the 17th day of March, 2000.

---

Footnote 1 A settlement has been reached between the plaintiff and defendants E.I. Dupont De Nemours & Co., Bayer Corporation and FUJI Medical Systems U.S.A., Inc. thus rendering the motions to dismiss filed by these defendants moot.

Footnote 2 Since the *Hyde* decision, this Court has handled at least one other case involving settlement of both direct and indirect purchaser claims. *See Long v. Abbott Labs*, 1999 NCBC 10 (No. 97-CVS-8289, Mecklenburg County Super. Ct. July 30, 1999) (Tennille, J).

Footnote 3 One of the problems inherent in indirect purchaser class actions is that if the division of a settlement or judgment is diverse, the

distribution amount can be too small to warrant individual claims against the fund, or can be so small that attorney fees and administration costs become disproportionately high. *See Long v. Abbott Labs*, 1999 NCBC 10 (No. 97-CVS-8289, Mecklenburg County Super. Ct. July 30, 1999) (Tennille, J.) (order on petition for attorney fees). The federal approach consolidates damages at the distributor level where significant incentives to sue may exist and damages are far less speculative and simpler to prove.

Footnote 4  Counsel for plaintiffs and the other defendants have indicated to the Court that they have reached a settlement. A final settlement, including specification of how the settlement funds will be allocated, has not been presented to the Court for approval. Settlement will raise many of the same allocation issues.