**SDI READING CONCRETE, INC., Plaintiff,**

v.

**HILLTOP BASIC RESOURCES, INC., Defendant.**

**READING CENTRAL MIXED CONCRETE, INC., Plaintiff,**

v.

**HILLTOP BASIC RESOURCES, INC., Defendant.**

Nos. C–1–82–481, C–1–82–612.

United States District Court, S.D. Ohio, W.D.

Dec. 15, 1983.

Armistead W. Gilliam, Jr., Dayton, Ohio, for plaintiffs.

Glenn V. Whitaker, Cincinnati, Ohio, Robert J. Hoerner, Jones, Day, Reavis & Pogue, Cleveland, Ohio, for defendant.

## OPINION AND ORDER

SPIEGEL, District Judge.

This matter is before the Court for a hearing on defendant's motion for summary judgment (doc. 53). Plaintiffs filed a memorandum in opposition (doc. 61) to which defendant replied (doc. 63).

There are two aspects to defendant's motion. First, defendant asserts that plaintiff SDI lacks standing under the *Illinois Brick* doctrine to assert an antitrust claim. Secondly, defendant maintains that it is entitled to judgment as a matter of law with respect to Count III of the amended complaint alleging unlawful price discrimination under the Robinson-Patman Act. For reasons to be discussed the Court finds that defendant's motion should be granted with respect to the standing issue but denied with respect to the Robinson-Patman issue as there is a question of fact as to whether Hilltop's sale of aggregates to plaintiffs pursuant to a long term contract were "reasonably comparable" transactions. Accordingly, judgment is entered for defendant and against plaintiff SDI in the case of *SDI Reading Concrete, Inc. vs. Hilltop Basic Resources, Inc.*, C–1–82–481, only.

Also before the Court is defendant's motion to supplement its motion for summary judgment (doc. 72). The motion to supplement has been opposed by defendant (doc. 73) and plaintiff has responded (doc. 74). Defendant's motion goes only to the issue of SDI's standing to assert an antitrust claim. As we find it unnecessary to consider the additional material, the motion to supplement is denied.

The third issue before the Court is plaintiff's motion to amend the complaint (doc. 70) which is opposed by defendant (doc. 75). For reasons to be stated, and as the parties were notified by the Court in a final pretrial conference November 18, 1983, the motion to amend has been granted.

The final motion before the Court relates to our ruling granting defendant's motion for summary judgment against SDI in the case of *SDI Reading Concrete, Inc. v. Hilltop Basic Resources, Inc.*, C–1–82–481. Plaintiff has moved for entry of final judgment under Rule 54(b), Fed.R.Civ.P., or alternatively for certification under 28 U.S.C. § 1292(b) and for postponement of the January 16, 1984 trial (doc. 79). By letter to the Court (doc. 84), defendant has indicated that it is opposed to vacating the trial date. In addition, defendant states that once the Court issues its order granting defendant's motion for summary judgment as against SDI, defendant will enter a voluntary dismissal without prejudice of its counterclaim against SDI. Once that has been accomplished, all of the claims and counterclaims in the case of *SDI Reading Concrete, Inc. vs. Hilltop Basic Resources, Inc.*, No. C–1–82–481, will have been resolved and plaintiff SDI will have an automatic right of appeal. Accordingly, we conclude that it is unnecessary to decide the issue of certification under either Rule 54(b) or 28 U.S.C. § 1292(b). In addition, we decline to vacate the trial date of January 16, 1984. Accordingly, plaintiff's motion (doc. 79) is denied.

## I.

In these consolidated cases, plaintiffs SDI Reading Concrete, Inc. (SDI) and Reading Central Mixed Concrete, Inc. (Reading) have filed almost identical lawsuits against Hilltop Basic Resources, Inc. (Hilltop), alleging violations of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2; Section 3 of the Clayton Act, 15 U.S.C. § 14; and Section 2 of the Robinson-Patman Act, 15 U.S.C. § 13. Both plaintiffs seek to recover, among other things, alleged overcharges they claim they were forced to pay Hilltop for sand and gravel pursuant to what they claim was an unlawful tie-in arrangement. Both plaintiffs seek treble damages pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15.

## II.

As stated earlier, defendant's motion for summary judgment (doc. 53) has two facets. With respect to each facet, the narrow question which we must decide is whether there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The Court cannot try issues of fact on a Rule 56 motion, but is empowered to determine only whether there are issues to be tried. *In re Atlas Concrete Pipe, Inc.*, 668 F.2d 905, 908 (6th Cir.1982). The moving party "has the burden of showing conclusively that there exists no genuine issue as to a material fact and the evidence together with all inferences to be drawn therefrom must be read in the light most favorable to the party opposing the motion." *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir.1979). And, while the movant's papers are to be closely scrutinized, those of the opponent are to be viewed indulgently. *Id.* at 63. "[T]he District Court [is] obligated to consider not only the materials specifically offered in support of the motion, but also all pleadings, depositions, answers to interrogatories, and admissions properly on file and thus properly before [the] court." *Id.*, quoting Rule 56(c), Fed.R.Civ.P.

The general rule in antitrust actions is that summary judgment should be granted sparingly. The Sixth Circuit, however, has held that summary judgment should be granted in antitrust actions where there is

no probative evidence to support a party's claim. *Bouldis v. U.S. Suzuki Motor Corp.*, 711 F.2d 1319 at 1324 (6th Cir.,1983).

## III.

### A. *Indirect-Purchaser Doctrine*

The first facet of defendant Hilltop's motion for summary judgment is that plaintiff SDI lacks standing under the indirect-purchaser doctrine developed by the United States Supreme Court in *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977) and elaborated upon by the United States Court of Appeals for the Sixth Circuit in *Jewish Hospital Association of Louisville, Kentucky, Inc. v. Stewart Mechanical Enterprises, Inc.*, 628 F.2d 971 (6th Cir.1980), *cert. denied*, 450 U.S. 966, 101 S.Ct. 1483, 67 L.Ed.2d 615 (1981). It is undisputed that both plaintiffs purchased sand and gravel from Hilltop. The question before us, however, is whether SDI was an indirect purchaser within the meaning of *Illinois Brick.*

In *Illinois Brick,* the Supreme Court held that indirect purchasers have no standing to assert a claim for treble damages even if they can demonstrate that the overcharges allegedly resulting from antitrust violations were passed on to them by the producers of such goods. The Court relied upon *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481, 88 S.Ct. 2224, 20 L.Ed.2d 1231 (1968), in which the Court rejected the defense that indirect purchasers were the parties injured by an antitrust violation. *Hanover Shoe* held that except in very limited circumstances, a direct purchaser suing for treble damages is deemed to have been injured by the full amount of the overcharge it paid to the antitrust violator and therefore the antitrust defendant may not present evidence of injury to indirect purchasers as a defense.

The *Hanover Shoe* holding was based first, upon the Court's determination that it was more efficient to limit damage recoveries under the Clayton Act to direct purchasers rather than to spread it among all the purchasers in a chain of distribution. Secondly, the Court was unwilling to complicate treble damages actions with attempts to trace the effects of the overcharge. *Illinois Brick*, 431 U.S. at 725, 97 S.Ct. at 2064. The Court found that the same policies applied in *Illinois Brick* where the plaintiffs, indirect purchasers, sought to demonstrate injury by proving that overcharges had been passed on from the direct purchaser to the plaintiffs. The Court stated that *Hanover Shoe:*

> rest[ed] on the judgment that the antitrust laws will be more effectively enforced by concentrating the full recovery for the overcharge in the direct purchasers rather than by allowing every plaintiff potentially affected by the overcharge to sue only for the amount it could show was absorbed by it.

431 U.S. at 735, 97 S.Ct. at 2069. The Court emphasized the difficulty of tracing the overcharge passed on to any particular indirect purchaser. Accordingly, it rejected attempts to carve out exceptions for certain types of markets. 431 U.S. at 744, 97 S.Ct. at 2073. Although it did not create exceptions to the indirect-purchaser doctrine, the Court acknowledged *Hanover Shoe's* recognition of a possible exception. 431 U.S. at 724 and n. 2, 736, 97 S.Ct. at 2064 and n. 2, 2069. It stated, however, that *Hanover Shoe* "implicitly discouraged the creation of exceptions," adding that it would adhere to that decision's "narrow scope of exemption." *Id.* at 745, 97 S.Ct. at 2074. Because the *Illinois Brick* plaintiffs were unequivocally indirect purchasers, the Court did not consider who would be treated as an indirect purchaser.

■ Plaintiff SDI asserts that *Illinois Brick* does not apply because SDI was a direct purchaser of sand and gravel from Hilltop. We disagree. Our review of the pleadings and of the exhibits, affidavits and other materials submitted by the parties reveals that the undisputed facts demonstrate that SDI was an indirect purchaser.

Prior to 1977, Hilltop operated a concrete manufacturing business out of the Cincinnati River Terminal which it owned. Hilltop was also in the business of selling aggregates (sand and gravel).

In 1977 Hilltop decided to get out of the concrete manufacturing business, but to remain in the aggregates business. It entered into a lease agreement with Reading Central (doc. 61, exh. 1). Article 1 of the lease provided that Reading Central would lease part of Hilltop's River Terminal, including portions formerly used by Hilltop in its manufacturing business, to be used for operating a ready mixed concrete business. Article 18 provides that Reading will purchase all of the sand and gravel to be used in its operations at the River Terminal, with a minimum of 300,000 tons of sand and gravel per year. The prices to be paid for the first 300,000 tons each year are set forth in Article 18(b); with prices to be adjusted for the second and subsequent lease years according to an industry accepted index of aggregate prices.

Late in 1980 Reading decided to discontinue its ready-mixed concrete operations. In an agreement labeled Sale of Assets and made up of nine closing documents Reading sold some and leased other assets that it had used in its own operations to SDI (doc. 53, exh. A). Article 4 of the purchase contract provides for the sublease of Reading's River Terminal facilities from Reading to SDI. Article 8 of the contract provides that SDI would purchase its requirements of aggregates from Reading or Reading's affiliates on the condition that the prices charged by Reading were competitive. Article 26(a) of the lease and sublease agreement provides that SDI will perform "all additional obligations not enumerated [in the purchase contract], which are imposed upon [Reading], under the River Terminal Lease, which obligations are not otherwise assumed."

Hilltop agreed to the sublease of the River Terminal from Reading to SDI in a document, "Assignment of Lease," dated January 5, 1981 and signed by representatives of Hilltop, SDI, and Reading (doc. 61, exh. 4).

SDI used approximately 244,000 tons of aggregates in the year from March, 1981 to March, 1982. Hilltop maintained that SDI's failure to purchase and pay for 300,000 tons of aggregates constituted a default under the 1977 Hilltop-Reading lease arrangement. SDI subsequently vacated the premises, and filed its lawsuit against Hilltop May 10, 1982.[1]

SDI reasons that as the assignee of the 1977 Hilltop-Reading River Terminal Lease, it was subject to Reading's minimum aggregates purchase obligation under that lease. SDI maintains that the testimony about the purposes of the provisions of the purchase contract and about how those provisions worked demonstrates either that SDI purchased its aggregates directly from Hilltop and thus was a direct purchaser or, at a minimum that there is a factual issue as to whether SDI was a direct or indirect purchaser.

It is undisputed that SDI's aggregate purchases were paid for out of a checking account maintained in Reading's name. SDI would reimburse the account for the amount of the purchases. (dep. of John Gleeson, Treasurer of SDI, doc. 53, exh. B; dep. of James Simon, SDI President, doc. 53, exh. E). Simon did testify that the purpose of this procedure was to allow SDI, a new company, to take advantage of Reading's established credit reputation. Nevertheless, he also testified that Clyde Woeber, the owner of Reading, would attend the meetings with the suppliers and that it was likely that some of these suppliers believed that SDI was dealing directly with Reading as a buying company. He further testified that he did not tell the suppliers otherwise. In addition, he testified that the materials were invoiced to Reading rather than to SDI. In Simon's view this arrangement was strictly an administrative advantage; as he described it, SDI did "not in reality" purchase aggregates directly from Reading.

1. Reading filed its lawsuit against Hilltop six weeks later.

Needless to say, we are not bound by Simon's conclusion as to the nature of the SDI-Hilltop relationship. Rather we find that his undisputed testimony as to the manner in which SDI purchased its aggregates as well as the terms of the Reading-SDI "Sale of Assets" mandate the conclusion that SDI was an indirect purchaser.

## B. *Exceptions to the Indirect-Purchaser Rule*

SDI maintains, however, that even if it is an indirect purchaser, it falls within one of the two recognized exceptions to the *Illinois Brick* doctrine, arguing that the policy considerations of *Illinois Brick* do not exist in this situation and thus the rule should not apply. First it states that if SDI did purchase aggregates from Reading, it did so pursuant to the equivalent of a fixed-quantity, cost-plus contract under which Reading passed on the full amount of the alleged overcharges. Second, SDI argues that if it purchased aggregates from Reading, it did so pursuant to a purchase agency relationship under which it controlled Reading's purchases. SDI notes that both the cost-plus exception and the control exceptions were recognized by the Sixth Circuit in *Jewish Hospital Association of Louisville, Kentucky, Inc. v. Stewart Mechanical Enterprises, Inc.*, 628 F.2d 971 (6th Cir.1980), *cert. denied*, 450 U.S. 966, 101 S.Ct. 1483, 67 L.Ed.2d 615 (1981).

In *Jewish Hospital*, the Sixth Circuit considered a situation in which the plaintiff hospital had solicited bids from general contractors for the construction of an addition to the hospital. The general contractor who received the bid then subcontracted with the defendants. The Government later proceeded criminally and civilly against the *Jewish Hospital* defendants. Based on the Government's complaints and bills of particular, Jewish Hospital filed an action for treble damages against two of the subcontractors. 628 F.2d at 972–73. The Court discussed three exceptions to the *Illinois Brick* doctrine, emphasizing, however, the narrow scope of these exemptions. *Id.* at 975. As plaintiff SDI relies

only upon two of these exceptions, the cost-plus contract and the control exception, we shall discuss only these two exceptions.

### 1. *The Cost-Plus Exception*

■ Under *Jewish Hospital*, the cost-plus exception exists only where there is a pre-existing cost-plus contract, or its functional equivalent, allowing the direct purchaser to pass on the full amount of the overcharge. In that situation the direct purchaser has no incentive to absorb any of the overcharge. Where there is no incentive, the full amount is passed on, thereby eliminating the problem of tracing. The Sixth Circuit stated that a pre-existing incentive to absorb the full amount of the overcharge is "the essential characteristic" of this exception. Without that characteristic, all the problems of proof and uncertainties associated with tracing remain. *Id.* at 975–77.

Applying this standard to the undisputed facts of our case, we conclude that the essential characteristic of pre-existence is lacking and that the problem of tracing the alleged overcharges remains. SDI insists that Gleeson's undisputed testimony establishes that the SDI-Reading transactions were a wash, *i.e.*, SDI placed into Reading's checking account the precise amount paid by Reading to Hilltop. This fact establishes that Reading passed on the full amount of the overcharges, according to SDI.

■ We disagree. SDI's payments to Reading were pursuant to the 1981 agreement in which Reading sold or leased essentially all of its assets to SDI. The complexity of this sale and lease is apparent from the nine closing documents that make up the "Sale of Assets" (doc. 53, exh. A). In addition, Clyde Woeber, Reading's owner, testified that he wanted out of the concrete business and had offered his business to three other persons before discussing a sale with SDI. He also testified that he would not have sold Reading to SDI unless SDI assumed the obligations of the 1977 River Terminal lease (dep. of Clyde Woeber, doc. 63, exh. H). In other words,

Reading had an incentive to absorb some of the alleged overcharges by adjusting its prices for the sale and lease of its assets to make the arrangement more palatable to SDI. Under these circumstances, there are considerable uncertainties associated with tracing the overcharges to SDI.

SDI relies upon the affidavit of Joseph L. Rippe, SDI's accountant who participated in structuring the Reading-SDI transaction (doc. 61, exh. 18). Rippe stated that the sale and lease payments were determined solely by the value of Reading's assets and that he did not consider overcharges for aggregates in analyzing those payments. That statement, however, is a characterization by an individual who purports to speak for both SDI and Reading but in fact is an officer of neither but rather SDI's accountant. As such, the affidavit is insufficient to eliminate the uncertainties of proof associated with tracing alleged overcharges. *See Merican, Inc. v. Caterpiller Tractor Co.*, 713 F.2d 958 (3d Cir.1983).

Secondly, SDI maintains that the motion should be denied because of the uncertainties associated with the SDI-Reading relationship in connection with SDI's purchase of aggregates and whether or not Reading had an incentive to absorb the alleged overcharges. It is true that in the usual case, uncertainties are grounds for denying a motion for summary judgment. But where, as here, the uncertainties flow out of problems of proof in tracing alleged overcharges in a private antitrust action for treble damages, those very uncertainties are grounds for granting the motion. For example, in *Jewish Hospital* the Sixth Circuit affirmed the trial court's granting of defendant's motion for summary judgment. The uncertainties associated with tracing are indeed one of the fundamental policies underlying the rationale of *Illinois Brick* and *Jewish Hospital.*

Given the uncertainties of ascertaining whether Reading had an incentive to absorb some of the alleged overcharges, we conclude that the 1981 Reading-SDI arrangement does not constitute either a preexisting cost-plus contract, or its functional equivalent. Accordingly, and consistent with the Sixth Circuit's standard in *Jewish Hospital,* we find that SDI does not fall within the cost-plus exception to the *Illinois Brick* doctrine.

### 2. *The Control Exception*

The Sixth Circuit limited the control exception to those situations "involving such functional economic or other unity between the direct purchaser and either the defendant or the indirect purchaser that there effectively has been only one sale." *Jewish Hospital,* 628 F.2d at 975. The Hospital (the indirect purchaser) argued that the general contractor (direct purchaser) acted essentially as a purchasing agency responsible for assembling a package of goods and services for the Hospital. The Court disagreed, finding that the general contractor was required to construct a new wing for the hospital, not assemble a package of goods and services. The Court concluded that there was no "functional unity" creating in effect only one sale. Without that functional unity, all the problems of tracing remained undiminished. *Id.* at 974–75.

It is undisputed that Reading and SDI are separate and independent corporations. (Simon aff., doc. 63, exh. I; Woeber aff., doc. 63, exh. J). SDI maintains, however, that if SDI is an indirect purchaser, Reading was acting as an independent broker or purchasing agent to procure aggregates for SDI from Hilltop. It refers us to *In re Toilet Seat Antitrust Litigation,* 1977–2 Trade Cases ¶ 60, 601 (E.D.Mich.1977) and the Sixth Circuit's description of the *Toilet Seat* relationship as a proper example of the control exception.

The test, however, is whether there is such a unity between SDI and Reading that the sale of aggregates can be considered one sale. If not, the problems of tracing the overcharges remain. 628 F.2d at 975.

On the undisputed facts already discussed, we cannot conclude that there was only one sale. The mere fact that Reading's owner, Clyde Woeber, was present at some of SDI's meeting with suppliers does

not establish a single sale or that Reading was acting as SDI's purchasing agent. Reading paid for the aggregates; SDI reimbursed Reading. This all occurred in the context of the 1981 Reading-SDI transaction. In *Toilet Seat* there was no such transaction. In addition, in *Toilet Seat* it was undisputed that plaintiff paid its purchasing agent a monthly fee for purchasing goods for the plaintiff. No such purchasing agency arrangement exists here which could permit us to conclude that there was a functional unity between SDI and Reading sufficient to create one sale. Accordingly, we conclude that the control exception does not apply.

Having found that SDI is an indirect purchaser and further that neither the cost-plus or control exceptions apply, we conclude that under *Illinois Brick* SDI lacks standing to assert a claim for treble damages under the Clayton Act. Accordingly, judgment is hereby entered against plaintiff and for defendant in the case of *SDI Reading Concrete, Inc. v. Hilltop Basic Resources, Inc.*, C–1–82–481, only.

### IV.

The second facet of defendant's motion for summary judgment goes to Count III of the complaint in which Reading alleges price discrimination in violation of the Robinson-Patman Act, 15 U.S.C. § 13 on the ground that Hilltop charged Reading higher prices for its aggregates than it charged other purchasers during the same period.[2] Hilltop now argues that the undisputed facts demonstrate that the sales to Reading and those to other purchasers were not "reasonably comparable and contemporaneous transactions," citing *FTC v. Borden Co.*, 383 U.S. 637, 86 S.Ct. 1092, 16 L.Ed.2d 153 (1969) and *Texas Gulf Sulfur Co. v. J.R. Simplot Co.*, 418 F.2d 793 (9th Cir. 1969). Hilltop maintains that its sale of aggregates to Reading pursuant to the parties' long-term contract is not comparable

to its sales to other buyers described as spot purchases.

It is well-established that the Robinson-Patman Act prohibits unequal treatment of customers in reasonably comparable transactions. *Borden*, 383 U.S. at 643, 86 S.Ct. at 1097. What is not well-established is what is "reasonably comparable". Hilltop has not cited nor can we locate any case holding that a sale pursuant to a long-term contract is, as a matter of law, not reasonably comparable to a spot purchase.

■ We find that it is inappropriate on a motion for summary judgment to conclude that Hilltop's sales to purchasers other than Reading were not comparable to sales to Reading. This is demonstrably a question of fact that must be left to the trier of fact. Accordingly, defendant's motion for partial summary judgment is denied.

### V.

Also before the Court is plaintiffs' motion to amend the complaint (doc. 70) and defendant's memorandum in opposition (doc. 76). Plaintiff SDI wishes to abandon one of its claims for relief as that claim was unsubstantiated by discovery. Both SDI and Reading wish to seek additional equitable and injunctive relief. Defendant's opposition is based upon its assertion that the motion to amend is based upon bad faith.

■ It is fundamental that leave to amend "shall be freely given when justice so demands." Rule 15(a), Fed.R.Civ.P. Bad faith is a recognized basis for denying leave. *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). However, we find defendant's allegations of bad faith unsupported by the record. Accordingly, the motion is granted with respect to plaintiff Reading in the case of *Reading Central Mixed Concrete, Inc. v. Hilltop Basic Resources, Inc.*, C–1–82–612.

Having granted defendant's motion for summary judgment and entered judgment

---

2. Defendant's motion is also directed at Count III of SDI's complaint. As we have concluded that SDI lacks standing, we need not consider

the motion with respect to SDI. Nonetheless, if we were to consider the motion with respect to SDI, we would deny it for reasons stated above.

for defendant in the case of *SDI Reading Concrete, Inc. v. Hilltop Basic Resources, Inc.,* C–1–82–481, we need not decide the motion with respect to SDI. Nevertheless, we would grant SDI's motion to amend had we not determined that SDI has no standing to sue.

## VI.

There are two final matters both of which were disposed of in the introduction. For reasons stated there, we deny defendant's motion to supplement its motion for summary judgment (doc. 72) as we find it unnecessary to consider the additional material proffered by defendant.

Also for reasons stated in the introduction, plaintiff's motion for certification under either Rule 54(b), Fed.R.Civ.P., or 28 U.S.C. § 1292(b) (doc. 79) is denied as there is no need for certification.

## VII.

To summarize, defendant's motion for summary judgment is granted with respect to SDI's standing to assert a claim for treble damages under the Clayton Act. Accordingly, judgment is hereby entered against plaintiff and for defendant in *SDI Reading Concrete, Inc. v. Hilltop Basic Resources, Inc.,* C–1–82–481.

Defendant's motion for partial summary judgment or Count III of the amended complaint is denied. Also denied are defendant's motion to supplement its motion for summary judgment and plaintiff's motion for certification and to vacate the trial date.

Plaintiffs' motion to amend the complaint is granted.

SO ORDERED.