792 A.2d 336

Bobby **DAVIDSON**, et al.

v.

**MICROSOFT CORPORATION.**

No. 60, Sept. Term, 2001.

Court of Special Appeals of Maryland.

Feb. 28, 2002.

44

Jeffrey R. DeCaro (DeCaro, Doran, Siciliano, Gallagher & DeBlasis, LLP, on the brief) Lanham, for appellants.

Michael F. Brockmeyer (Piper, Marbury, Rudnick & Wolfe, LLP, Baltimore, and David B. Tulchin, and Sullivan & Cromwell of New York, NY, on the brief) for appellee.

Argued before JAMES R. EYLER, SONNER, and MARVIN H. SMITH (Ret., specially assigned), JJ.

JAMES R. EYLER, Judge.

In March, 2000, appellants, Bobby Davidson and Tri County Industries, Inc., brought suit in the Circuit Court for Prince George's County on behalf of a class of Maryland consumers claiming appellee, Microsoft Corporation, overcharged them for its Windows 98 computer operating system. Appellants claimed that appellee's practices were a monopolization, in violation of the Maryland Antitrust Act ("MATA"), Md.Code, Comm. Law, §§ 11–201—11–213 (2000, 2001 Supp.), and a deceptive trade practice, in violation of the Maryland Consumer Protection Act ("MCPA"), Md.Code, Comm. Law §§ 13–101—13–501 (2000, 2001 Supp.). Appellee moved to dismiss

appellants' suit, contending that the complaint failed to state a claim under either statute. A hearing was held on the motion on January 26, 2001.

In its motion, appellee argued that appellants did not directly purchase software from appellee and that federal antitrust case law precludes suits by such "indirect purchasers." [1] Appellee also asserted that the MCPA does not include MATA violations in its list of unfair or deceptive trade practices. The circuit court agreed and, on February 14, 2001, granted appellee's motion to dismiss for failure to state a claim upon which relief could be granted. Appellants filed this appeal from that decision, alleging that: (1) the circuit court erred in deciding that private indirect purchasers had not sustained an antitrust injury within the meaning of the Maryland Antitrust Act; and (2) the circuit court erred in holding that appellants did not state a viable claim under the MCPA. We shall affirm the judgment of the circuit court.

## Factual Background

Appellants' lawsuit is one of many lawsuits filed against appellee in state and federal courts that rely on Judge Thomas Penfield Jackson's decision in *United States v. Microsoft Corp.*, 84 F.Supp.2d 9 (D.D.C.1999)(findings of fact), 87 F.Supp.2d 30 (D.D.C.2000)(legal ruling), *aff'd in part, rev'd in part, and remanded in part*, 253 F.3d 34 (D.C.Cir.2001), finding that appellee had engaged in business practices in violation of federal antitrust laws. Appellants' complaint alleges that appellee has "monopoly power ... in the market for operating systems for Intel-based personal computers." The complaint also asserts that appellee has maintained that monopoly power by "anticompetitive and unreasonably exclusionary conduct." The complaint states that appellee allegedly exercised its monopoly power by licensing its Windows 98

---

**1.** In support of this argument, appellee relies on *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977), which will be discussed in detail *infra*. The basic rule stemming from *Illinois Brick* is that only direct purchasers may bring suit under federal antitrust law to recover for alleged overcharges.

operating system to computer manufacturers, called Original Equipment Manufacturers ("OEMs"), and distributors "at a monopoly price in excess of what Microsoft would have been able to charge in a competitive market."

The Judicial Panel on Multidistrict Litigation consolidated all of the cases pending in federal court before then-Chief Judge J. Frederick Motz of the United States District Court for the District of Maryland. Judge Motz dismissed all antitrust claims brought by indirect purchasers under the *Illinois Brick* rule. *See In re Microsoft Corp. Antitrust Litig.*, 127 F.Supp.2d 702 (D.Md.2001). The circuit court relied heavily on that decision and, similarly, dismissed appellants' state law claims. The circuit court also dismissed the appellants' unfair or deceptive trade practices claim.

## Discussion

### I. Standard of Review

In reviewing a motion to dismiss, we must determine whether the trial court was legally correct. *See Fioretti v. Maryland State Bd. of Dental Examiners*, 351 Md. 66, 71, 716 A.2d 258 (1998). We have held that "[t]he grant of a motion to dismiss is only proper when the complaint does not disclose, on its face, a legally sufficient cause of action." *Campbell v. Cushwa*, 133 Md.App. 519, 534, 758 A.2d 616 (2000)(citing *Hrehorovich v. Harbor Hosp. Ctr., Inc.*, 93 Md.App. 772, 785, 614 A.2d 1021 (1992)). On review, this court must construe all facts and allegations in a light most favorable to the non-moving party, in this case, the appellants. *See Shoemaker v. Smith*, 353 Md. 143, 167, 725 A.2d 549 (1999). We will "assume the truth of all relevant and material facts that are well pleaded and all inferences which can be reasonably drawn from those pleadings." *Sharrow v. State Farm Mut. Auto. Ins. Co.*, 306 Md. 754, 768, 511 A.2d 492 (1986).

### II. Maryland Antitrust Act

Appellants contend that the Supreme Court's decision in *Illinois Brick* does not control the case *sub judice* or, in the

**48**

alternative, that one of its recognized exceptions applies. With respect to the first point, appellants' primary argument is that they are direct licensees of Microsoft and that the product (Windows 98) is not sold, but rather only licensed. Before using Windows 98 for the first time, appellants had to enter into an end-user license agreement ("EULA") with Microsoft. Because of the resulting direct relationship between appellants and appellee, according to appellants, the rationale of *Illinois Brick* does not apply. Appellants also rely on the Supreme Court's decision in *California v. ARC America Corp.,* 490 U.S. 93, 109 S.Ct. 1661, 104 L.Ed.2d 86 (1989), for the proposition that federal antitrust law does not preempt state antitrust law, meaning that a state's own laws may be interpreted to permit individual purchasers to recover antitrust damages.

In *Illinois Brick Co. v. Illinois,* 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977), the State of Illinois brought suit against concrete block manufacturers, alleging price fixing in violation of section 4 of the Clayton Act, 15 U.S.C. § 15. The Supreme Court held that the state was an indirect purchaser as it did not buy concrete blocks directly from the manufacturers. *See Illinois Brick,* 431 U.S. at 726, 97 S.Ct. 2061. Declining to overrule the precedent established in *Hanover Shoe, Inc. v. United Shoe Mach. Corp.,* 392 U.S. 481, 88 S.Ct. 2224, 20 L.Ed.2d 1231 (1968),[2] the Court explained,

> [This] Court's concern in Hanover Shoe to avoid weighing down treble-damages action with the "massive evidence and complicated theories" involved in attempting to establish a pass-on defense against a direct purchaser applies a fortiori to the attempt to trace the effect of the overcharge through

---

**2.** *Hanover Shoe* involved an antitrust action brought against a manufacturer of shoes. The manufacturer defended the action by claiming that the plaintiff did not sustain antitrust injury because it had passed the alleged overcharges on to retail customers as indirect purchasers. The Court rejected this defense and held that direct purchasers are injured in the full amount of the overcharge paid by them to the alleged antitrust violator. *Hanover Shoe,* 392 U.S. at 494, 88 S.Ct. 2224.

each step in the distribution chain from the direct purchaser to the ultimate consumer.

*Illinois Brick,* 431 U.S. at 741, 97 S.Ct. 2061. The Court concluded that indirect purchasers are not injured in their businesses within the meaning of section 4 of the Clayton Act and, as a result, federal antitrust laws bar claims by indirect purchasers. *See id.* at 745–47, 97 S.Ct. 2061.

Before considering whether the *Illinois Brick* rule bars appellants' suit, we must resolve the question of whether *Illinois Brick* applies to causes of action brought under MATA. Maryland Code, Com. Law II, section 11–209, governs the determination of who has standing for redress of MATA violations and who has sustained an antitrust injury. At issue in this appeal is section 11–209(b), which provides:

(1) The United States, the State, or any political subdivision organized under the authority of the State is a person having standing to bring an action under this subsection.

(2)(i) A person whose business or property has been injured or threatened with injury by violation of § 11–204 may maintain an action for damages or for an injunction or both against any person who has committed the violation.

(ii) The United States, the State, or any political subdivision organized under the authority of this State may maintain an action under subparagraph (i) of this paragraph for damages or for an injunction or both regardless of whether it dealt directly or indirectly with the person who has committed the violation.

The General Assembly has defined "person" as "an individual, corporation, business trust, estate, trust, partnership, association, two or more persons having a joint or common interest, or any other legal or commercial entity." Md.Code, Com. Law II, § 11–201(f)(2000, 2001 Supp.).

While some cases discuss *Illinois Brick* in terms of standing, the Supreme Court expressly stated that it was not deciding the issue of standing. Instead, the Court decided the case on the basis of which party sustained antitrust injury as a result of the illegal overcharge. *See Illinois Brick,* 431 U.S.

at 728 n. 7, 97 S.Ct. 2061 ("the question of which persons have been injured by an illegal overcharge for purposes of § 4 [of the Clayton Act] is analytically distinct from the question of which persons have sustained injuries too remote to give them standing to sue for damages under § 4"). The Court determined that the direct purchaser is the one injured for the purposes of federal antitrust law. *See id.* at 729, 97 S.Ct. 2061. Although CL section 11–201(f) broadly defines the word "person," it does not purport to address the *Illinois Brick* issue, namely whether antitrust injury has occurred or been threatened as required by section 11–209(b).

Commercial Law II, section 11–202(a)(1), states that the purpose of MATA is "to complement the body of federal law governing restraints of trade, unfair competition, and unfair, deceptive, and fraudulent acts or practices." Section 11–202(a)(2) provides that, in construing MATA, "courts are to be guided by the interpretation given by federal courts to the various federal statutes dealing with the same or similar matters." Md.Code, Comm. Law, § 11–202(a)(1),(2)(2000, 2001 Supp.). Judge Young, when analyzing Maryland's antitrust law in *In re Mid–Atlantic Toyota Antitrust Litigation,* 541 F.Supp. 62, 64 (1981), explained that section 4 of the Clayton Act is "a provision of law comparable to [s]ection 11–209(b)(2) of the Maryland Antitrust law." 541 F.Supp. at 64.[3] *See also State v. Jonathan Logan, Inc.,* 301 Md. 63, 67–68, 75, 482 A.2d 1 (1984)(describing section 4 of the Sherman Act, 15 U.S.C. § 4, as "[a]n analogous civil enforcement provision under the federal antitrust laws" to CL § 11–209(a)).

The Court of Appeals was asked to interpret MATA in *State v. Jonathan Logan, Inc.,* after the State brought an enforcement action under CL section 11–209(a) to recover overcharges on behalf of consumers. One of the questions before the Court was whether section 11–209(a) authorized the State

---

**3.** The relevant portion of section 4 of the Clayton Act, 15 U.S.C. § 15 provides, "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefore ..." 15 U.S.C. § 15(a)(2001).

to "obtain ... a monetary recovery for the benefit of third persons." *Jonathan Logan*, 301 Md. at 70, 482 A.2d 1. The Court referred to the "directive in § 11–202(a)(2) [for Maryland courts] to be guided by federal court interpretations of federal antitrust statutes," and, absent an express indication to the contrary, followed federal law. *See id.* at 73–75, 482 A.2d 1. Based on the relevant federal law, the Court concluded that MATA did not permit the state to obtain a monetary award for the benefit of injured consumers under section 11–209(a). *See id.* at 76, 482 A.2d 1. For additional cases relying on federal authority for guidance in interpreting and applying MATA provisions, *see, e.g., Natural Design, Inc. v. Rouse Co.*, 302 Md. 47, 53, 485 A.2d 663 (1984); *Cavalier Mobile Homes, Inc. v. Liberty Homes, Inc.*, 53 Md.App. 379, 384–90, 454 A.2d 367 (1983); *Greenbelt Homes, Inc. v. Nyman Realty, Inc.*, 48 Md.App. 42, 48–52, 426 A.2d 394 (1981); *Cities Service Oil Co. v. Burch*, 29 Md.App. 430, 436–38, 349 A.2d 279 (1975).

We are further persuaded that *Illinois Brick* should apply to MATA actions by the legislative history of section 11–209. In 1981, the General Assembly rejected a bill that would have repealed the *Illinois Brick* principle with respect to all plaintiffs. The following year, in 1982, the legislature passed a limited amendment to section 11–209(b)(2) to provide that the United States, the State, or any political subdivision of the State may sue under subparagraph (i) "regardless of whether it dealt directly or indirectly with the person who has committed the violation."

The introduction of Senate Bill 484 in 2001 provides additional insight. That bill would have amended section 11 209(b) to permit suits by private parties who dealt indirectly with the violator. The bill was defeated in committee by a vote of six to five, but its consideration is consistent with the conclusion we reach here.[4]

---

4. We recognize that the mere introduction of a bill to the General Assembly, particularly a bill defeated in committee, does not establish legislative intent. We are not relying on the introduction of Senate Bill

**52**

■ Appellants correctly argue that *California v. ARC America Corp.*, 490 U.S. 93, 109 S.Ct. 1661, 104 L.Ed.2d 86 (1989), established that *Illinois Brick* did not preempt state antitrust law and hence, states are free to "allow indirect purchasers to recover under their own antitrust laws." *ARC America,* 490 U.S. at 103, 109 S.Ct. 1661. The decision itself, however, did not create a cause of action. As discussed *supra,* the General Assembly has not seen fit to change the *Illinois Brick* principle since the *ARC America* opinion was issued. We hold today, therefore, that until the legislature expressly provides otherwise, *Illinois Brick* bars suits by indirect purchasers seeking to recoup alleged overcharges under MATA.

In *Kansas v. UtiliCorp United Inc.*, 497 U.S. 199, 110 S.Ct. 2807, 111 L.Ed.2d 169 (1990), the Supreme Court reaffirmed *Illinois Brick.* The Court rejected petitioners' argument that because the overcharges were easy to trace, the economic rationale behind *Illinois Brick's* bar on indirect purchaser suits was inapplicable, and stated that creating an exception to *Illinois Brick* would undermine the rule. *See UtiliCorp United,* 497 U.S. at 208, 110 S.Ct. 2807 (disagreeing with petitioners' contentions that the Court's "concerns in *Hanover Shoe* and *Illinois Brick* about the difficulties of apportionment, the risk of multiple recovery, and the diminution of incentive for private antitrust enforcement would not exist"); *see also Campos v. Ticketmaster Corp.*, 140 F.3d 1166 (8th Cir.1998) (paying fees did not make the plaintiffs direct purchasers where plaintiffs alleged that Ticketmaster was engaged in antitrust activities with concert venues and promoters, and monopolized the market for ticket distribution services, as "billing practices" are not "determinative of indirect purchaser status." *Id.* at 1171); *Sports Racing Services v. Sports Car Club of America,* 131 F.3d 874 (10th Cir.1997).

■ Appellants contend that their relationship with appellee differs from that of an indirect purchaser, as the EULA

---

484 to support the application of *Illinois Brick* to MATA actions, nor do we need to so rely, as the preceding discussion offers ample authority.

gives them a direct relationship with appellee. An indirect purchaser has been defined as, "one who bears some portion of a monopoly overcharge only by virtue of an antecedent transaction between the monopolist and another, independent purchaser." *Campos*, 140 F.3d at 1169 (summarizing numerous definitions that exist for an indirect purchaser).

Judge Motz, in the multi-district litigation entitled *In re Microsoft Corp. Antitrust Litigation*, 127 F.Supp.2d 702 (D.Md.2001), held that consumers/end-users as licensees are not direct purchasers.[5] Judge Motz opined:

Plaintiffs first argue that they were direct purchasers from Microsoft. Although they acknowledge that they did not buy software directly from Microsoft, they assert that the product they purchased was not software itself but EULAs that ran directly between Microsoft and themselves. Plaintiffs emphasize that bricks [referring to the product at issue in *Illinois Brick*] and software products are profoundly different: bricks are useable when the manufacturing process is complete; software does not become useable until it is 'unlocked' when first clicked on. At that moment Microsoft requires that the software user accept the restrictions contained in the accompanying EULA.

Although the EULA may establish a direct relationship between Microsoft and the consumer, that relationship is not sufficient to make the consumer a 'direct purchaser' within the meaning of Illinois Brick.... [P]laintiffs do not allege that they purchased either the software or the EULAs directly from Microsoft. The software was installed on a computer prior to purchase, from either an OEM or a retail dealer, and the EULA accompanied the software at purchase. While the terms of the EULA running to the consumer are different from those of the license running from Microsoft to an OEM, that fact is of no present

---

**5.** Because the plaintiffs' claims in *In re Microsoft* are nearly identical to those in the case *sub judice,* and because we agree with Judge Motz's thorough analysis of the *Illinois Brick* issues, we adopt relevant portions of Judge Motz's opinion.

relevance. Whether the consumer buys software or the EULA, the immediate economic transaction constituting the purchase occurs between the consumer and an OEM or retail seller. That is the conclusion reached by the vast majority of state courts that have considered the issue under state antitrust laws, and I agree with them.

*In re Microsoft,* 127 F.Supp.2d at 709 (citations omitted). Turning to the instant appeal, appellants are also indirect purchasers and are, therefore, barred by *Illinois Brick* from bringing suit against appellee under MATA, unless an exception to *Illinois Brick* applies.

■ There are two recognized exceptions to the *Illinois Brick* rule: the pre-existing cost-plus contract exception and the ownership or control exception. In *Illinois Brick,* the Supreme Court described the pre-existing cost-plus contract situation:

In such a situation, the purchaser is insulated from any decrease in its sales as a result of attempting to pass on the overcharge, because its customer is committed to buying a fixed quantity regardless of price. The effect of the overcharge is essentially determined in advance, without reference to the interaction of supply and demand that complicates the determination in the general case.

431 U.S. at 736, 97 S.Ct. 2061. Although appellants attempt to allege sufficient facts for a *prima facie* fulfillment of this exception by stating, in the complaint, that "the overcharge incurred by plaintiffs and the Class was determined in advance without regard to the interactions of supply and demand," appellants fail to recognize that such is merely a recitation of the rationale behind the exception, not a statement of the exception itself. The complaint contains no allegations demonstrating that the relationship between appellants and the direct purchasers (the OEMs) is that which is required to satisfy the pre-existing cost-plus contract exception; there is no allegation regarding a pre-existing contract, nor is there mention of a contract wherein the quantity to be

purchased was fixed. Hence, this first exception to the *Illinois Brick* rule is inapplicable to the instant appeal.

█ The second exception to the direct purchaser rule is the "owned or controlled" exception. Judge Motz explained and analyzed this exception in *In re Microsoft:*

In a footnote in Illinois Brick, the Supreme Court indicated that if a "direct purchaser is owned or controlled by its customer," then "market forces have been superceded and the pass-on defense might be permitted." 431 U.S. at 736 n. 16, 97 S.Ct. 2061. This dictum has led to the creation of an "ownership or control" exception (applicable equally where the direct or indirect purchaser controls the other or whether the defendant allegedly owns or controls the intermediary). See *In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 605 (7th Cir.1997); *Jewish Hosp. Ass'n v. Stewart Mech. Enters.*, 628 F.2d 971, 975 (6th Cir.1980); *In re Mid–Atlantic Toyota Antitrust Litig.*, 516 F.Supp. 1287, 1292 (D.Md.1981). Plaintiffs contend that this case falls within the "control" prong of this exception because Microsoft used its monopoly power "to capture, dominate and exclusively control the OEM distribution channel" and to force the OEMs "to act as [its] agents in offering end-user licenses for acceptance or rejection by customers under terms strictly and exclusively dictated by Microsoft."

Courts that have adopted the control exception have emphasized that it must be narrowly construed. "The 'control' exception is limited to relationships involving such functional economic or other unity ... that there effectively has been only one sale." *Jewish Hosp. Ass'n,* 628 F.2d at 975. Unless such a "functional unity" is required, the problems of potential multiple recoveries and apportionment of damages persist. *SDI Reading Concrete, Inc. v. Hilltop Basic Res., Inc.,* 576 F.Supp. 525, 530 (S.D.Ohio 1983); *Dart Drug Corp. v. Corning Glass Works,* 480 F.Supp. 1091, 1104 (D.Md. 1979). The Seventh Circuit permits the exception to be invoked only where the defendants control the direct purchaser "through interlocking directorates, minority stock ownership, loan agreements that subject the wholesalers to

the manufacturers' operating control, trust agreements, or other modes of control separate from ownership of a majority of the wholesalers' common stock." *Brand Name,* 123 F.3d at 605–06.

Plaintiffs' theory would extend the control exception well beyond its existing parameters. Whatever incentives OEMs and independent retail dealers may have to cooperate with Microsoft (or disincentives to sue it), they clearly are separate and independent entities capable of making their own decisions. Plaintiffs themselves have not alleged that on the critical issue the setting of prices Microsoft controlled the intermediaries' decision-making processes. The absence of such an allegation alone is fatal to their claims. *Jewish Hosp. Ass'n,* 628 F.2d at 975.

*In re Microsoft,* 127 F.Supp.2d at 713.

In the instant appeal, appellants contend that a "functional economic unity" exists between appellee and the direct purchasers (the OEMs). Appellants' complaint, however, is devoid of allegations which, even when read in the light most favorable to appellants, suffice to satisfy this exception. While appellants maintain that appellee sets the price for Windows 98 without regard to applicable market forces, there is no allegation that the same is true when OEMs determine prices for the computers ultimately purchased by appellants. More important, appellants do not argue that appellee controls the prices that OEMs charge appellants in the sale of personal computers. Hence, appellants' "functional economic unity" claim is without merit, and the "ownership or control" exception to *Illinois Brick* is inapplicable.

In summary, *Illinois Brick* controls the issue of whether a purchaser has sustained an injury under MATA, meaning that only direct purchasers may bring suit to recover an alleged illegal overcharge. The EULAs existing between appellants and appellee do not result in appellants being direct purchasers as defined by *Illinois Brick,* and neither exception to the *Illinois Brick* rule applies to the case *sub judice.* We therefore affirm the trial court's grant of appellee's motion to

dismiss for failure to state a claim upon which relief could be granted.

### III.  Maryland Consumer Protection Act

Construing the facts in a light most favorable to appellants, appellants do not have a legally cognizable claim for damages under MCPA, which prohibits certain "unfair or deceptive trade practice[s]" in connection with the sale of consumer goods.  Md.Code, Com. Law II, § 13–303(1)(2000, 2001 Supp.).  Appellants claim that appellee's alleged antitrust violations were also violations under the MCPA. Antitrust violations, however, are not listed in MCPA's list of prohibited activities.  The circuit court, therefore, correctly concluded that Maryland has separate statutory schemes addressing antitrust and unfair or deceptive trade practices, and that appellants' complaint contains no allegations that fit within the MCPA framework.  As Judge Motz wrote: "[T]he actionable unfair or deceptive trade practices listed in the [MCPA] do not include monopolistic conduct or other violations of [MATA]." *In re Microsoft*, 127 F.Supp.2d at 724 n. 25.  We agree, and affirm the decision of the circuit court on this issue.

**JUDGMENT AFFIRMED;  COSTS TO BE PAID BY APPELLANT.**

SONNER, J., dissenting.

I respectfully dissent.  While I agree with the majority that appellants' consumer protection act claim fails, I believe the majority reached the wrong conclusion on appellants' other claim grounded in a violation of the Maryland Antitrust Act ("MATA").  I believe the majority's opinion is flawed because it misconstrues the purpose of the *Illinois Brick* rule, and refers to the legislative history of a statute that is clearly unambiguous.

First, a bit of background about the Microsoft litigation explains why this Court should not follow the *Illinois Brick* rule, which denies indirect purchasers redress for monopolistic practices that have injured them.  *See Illinois Brick Co. v.*

*Illinois,* 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977). To follow that rule here is to confuse the important interests that underpin it.

In April 2000, Judge Thomas Pennfield Jackson ruled that Microsoft had used its market power to create a monopoly, which then permitted the overpricing of its Windows 98 Operating System. *United States v. Microsoft Corp.,* 87 F.Supp.2d 30 (D.D.C.2000). The U.S. Court of Appeals partially overturned the decision and remanded the case for rehearing. *United States v. Microsoft Corp.,* 253 F.3d 34 (D.C.Cir.2001).[1] Nevertheless, the appellate court let stand the essential find-

---

1.  The Court held:

    [W]e affirm in part and reverse in part the District Court's judgment that Microsoft violated § 2 of the Sherman Act by employing anticompetitive means to maintain a monopoly in the operating system market; we reverse the District Court's determination that Microsoft violated § 2 of the Sherman Act by illegally attempting to monopolize the internet browser market; and we remand the District Court's finding that Microsoft violated § 1 of the Sherman Act by unlawfully tying its browser to its operating system. Our judgment extends to the District Court's findings with respect to the state law counterparts of the plaintiffs' Sherman Act claims.

    We also find merit in Microsoft's challenge to the Final Judgment embracing the District Court's remedial order. There are several reasons supporting this conclusion. First, the District Court's Final Judgment rests on a number of liability determinations that do not survive appellate review; therefore, the remedial order as currently fashioned cannot stand. Furthermore, we would vacate and remand the remedial order even were we to uphold the District Court's liability determinations in their entirety, because the District Court failed to hold an evidentiary hearing to address remedies-specific factual disputes.

    Finally, we vacate the Final Judgment on remedies, because the trial judge engaged in impermissible *ex parte* contacts by holding secret interviews with members of the media and made numerous offensive comments about Microsoft officials in public statements outside of the courtroom, giving rise to an appearance of partiality. Although we find no evidence of actual bias, we hold that the actions of the trial judge seriously tainted the proceedings before the District Court and called into question the integrity of the judicial process. We are therefore constrained to vacate the Final Judgment on remedies, remand the case for reconsideration of the remedial order, and require that the case be assigned to a different trial judge on remand. We believe that this disposition will be adequate to cure the cited improprieties.

ing that Microsoft's monopolistic practices violated the Sherman Antitrust Act. What the appellants in this appeal seek to do, as indirect purchasers of Microsoft browsers, is sue Microsoft for damages resulting from the company's monopolistic activity. What *Illinois Brick* suggests is that they cannot bring suit because the direct purchasers, *e.g.,* IBM, Compaq, CompUSA, and Dell, will do so for them. *See Illinois Brick,* 431 U.S. at 730–33, 97 S.Ct. 2061; *see also* Jeff Patterson, Note, *Microsoft Antitrust Litigation: Illinois Brick Defeats its Intended Purpose,* 5 J. Small & Emerging Bus. L. 377, 384–85 (2001). The trouble is that the direct purchasers here are not likely to bring suit against the sole supplier of a popular operating system because, understandably, they fear retaliation by Microsoft, and they can pass on any monopolistic costs to the indirect purchasers.

This reality likewise undercuts another stated rationale in *Illinois Brick* that the incentive for direct purchasers of private recompense would aid the government in enforcing antitrust laws. *See Illinois Brick,* 431 U.S. at 745–46, 97 S.Ct. 2061. The simple truth is that a direct purchaser will gain more from selling the Microsoft product than policing the company's conduct. A third rationale for the outcome in *Illinois Brick* was judicial economy; the Court feared that including indirect purchasers would "add whole new dimensions of complexity to [Clayton Act] treble-damages suits and seriously undermine their effectiveness." *Id.* at 737, 97 S.Ct. 2061. The majority's application of *Illinois Brick* in this case, however, effectively forecloses judicial remedy, a result both unnecessary and unjustified in the name of efficiency. We must remember that, when the Supreme Court decided *Illinois Brick* in 1977, the world of browsers and personal computers was in its infancy. The case presented to us today demands a more independent analysis.

Turning to Maryland law, as the majority has noted, Maryland Code (1975, 2000 Repl.Vol.) Com. Law II, Section 11–209, governs the determination of who has standing for redress of MATA violations. At issue in this appeal is section 11–209(b), which provides:

(1) The United States, the State, and any political subdivision organized under the authority of the State is a person having standing to bring an action under this subsection.

(2)(i) A person whose business or property has been injured or threatened with injury by violation of § 11–204 may maintain an action for damages or for an injunction or both against any person who has committed the violation.

(ii) The United States, the State, or any political subdivision organized under the authority of this State may maintain an action under subparagraph (i) of this paragraph for damages or for an injunction or both regardless of whether it dealt directly or indirectly with the person who has committed the violation.

The General Assembly defined "person" as "an individual, corporation, business trust, estate, trust, partnership, association, two or more persons having a joint or common interest, or any other legal or commercial entity." Md.Code (1975, 2000 Repl.Vol.), Com. Law II, § 11–201(f). Section 11–209 serves the same purpose as section 4 of the federal Clayton Act. That Act states:

[A]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including reasonable attorney's fee.

15 U.S.C. § 15 (2000).

Maryland's antitrust law also states that we should be guided by federal court interpretations of federal statutes dealing with antitrust violations. Md.Code (1975, 2000 Repl. Vol.), Com. Law II, § 11–202(a)(2). The majority has interpreted this to mean that we are **bound** by federal court construction of federal antitrust statutes. In interpreting Maryland antitrust statutes, however, we are only **guided** by federal court interpretations of federal antitrust law. *See generally, Quality Disc. Tires, Inc. v. Firestone Tire & Rub-*

*ber Co.*, 282 Md. 7, 12, 382 A.2d 867 (1978)(holding that Supreme Court's *Colgate* principal did not preclude plaintiff's suit under Maryland antitrust law); *see also Greenbelt Homes, Inc. v. Nyman Realty, Inc.*, 48 Md.App. 42, 48, 426 A.2d 394 (1981) (expressly holding that we are not bound by federal court construction of federal law when interpreting MATA). Federal court construction guides me to part company with the majority and conclude that Maryland law allows indirect purchasers to obtain redress in our courts.

In *Illinois Brick*, the Supreme Court held that indirect purchasers are not injured in their businesses within the meaning of section 4 of the Clayton Act. In reaching this conclusion, the Court was bound by *Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 88 S.Ct. 2224, 20 L.Ed.2d 1231 (1968), a precedent it declined to overrule.[2] Without a doubt, because of the *Illinois Brick Rule*, the appellants, here, could not pursue their claims under **federal** antitrust law.

I do not, however, believe that we need or should follow the underpinning rationale from *Hanover Shoe* or *Illinois Brick* under **Maryland antitrust law.** While Congress has authority, under its Article I powers, to pre-empt state law, the Supreme Court has ruled that federal antitrust law does not pre-empt state law, because "Congress intended the federal antitrust laws to **supplement,** not displace, state antitrust remedies." *See California v. ARC America, Corp.*, 490 U.S. 93, 102, 109 S.Ct. 1661, 104 L.Ed.2d 86 (1989)(emphasis added). The Supreme Court, in *ARC America*, held that "[t]he congressional purposes on which *Illinois Brick* was based provide no support for a finding that state indirect purchaser

---

**2.** *Hanover Shoe* involved an antitrust action brought against a manufacturer of shoes. The manufacturer defended the action by claiming that the plaintiff had not been injured in its business because it had passed on the alleged overcharges to retail customers as indirect purchasers. The Court rejected the defense. *Hanover Shoe*, 392 U.S. at 494, 88 S.Ct. 2224. The Court was heavily persuaded by the concern that unless direct purchasers were allowed to sue, antitrust violators "would retain the fruits of their illegality." *Id.*

statutes are pre-empted by federal law." 490 U.S. at 105–106, 109 S.Ct. 1661. In fact, the Supreme Court cited section 11–209 as an example of a state statute that arguably allowed for indirect purchaser suits. *Id.* at 98 n. 3, 109 S.Ct. 1661. Certainly, as the majority holds, *ARC America* did not create a cause of action for the appellants, but I disagree with the conclusion that Maryland antitrust law itself does not contemplate a cause of action for indirect purchasers.

Notwithstanding the majority's determination to the contrary, MATA Section 11–209(b)(2)(ii), itself, makes absolutely no distinction between direct and indirect purchasers who have suffered injury as a result of antitrust violations. MATA allows **any** "person," as defined by section 11–201(f), who has suffered injury as a result of antitrust violations, to recover. Because it clearly makes no distinction, there is no ambiguity, and we may not find one where none exists.

We must apply principles of construction that render a common sense reading of statutory terms in light of the overriding purpose and goal of the statute. *Haigley v. Dept. of Health & Mental Hygiene*, 128 Md.App. 194, 222, 736 A.2d 1185 (1999) (quoting *Martin v. Beverage Capital Corp.*, 353 Md. 388, 399, 726 A.2d 728 (1999)). That goal is clear. The General Assembly stated its intent that MATA be liberally construed to serve its beneficial purposes, which is "to protect the public and foster fair and honest intrastate competition." Md.Code (1975, 2000 Repl.Vol.), Com. Law II, § 11–202. A liberal construction is one that harmonizes the general scheme of the statute and assists us in carrying out its legislative purposes. *Smith v. Higinbothom*, 187 Md. 115, 125, 48 A.2d 754 (1946). The majority's reading of the statute to create an ambiguity frustrates the expressed legislative purpose of the law.

The majority interprets section 11–209 to preclude indirect purchasers because the General Assembly failed to provide for them when it amended that section in 1982 to allow governmental entities to bring indirect purchaser suits. 1982 Md. Laws, ch. 214. The General Assembly's intent should be

interpreted by its actions, and not by its failure to act. *Harrison v. Montgomery County Bd. of Educ.*, 295 Md. 442, 466, 456 A.2d 894 (1983) (Davidson, J. dissenting); *Police Comm'r v. Dowling*, 281 Md. 412, 420–21, 379 A.2d 1007 (1977); *see also Styers v. Phillips*, 277 N.C. 460, 178 S.E.2d 583, 590 (1971).

The majority's opinion relies heavily on **federal** antitrust law in reaching its decision. This appeal, however, should be resolved solely upon the construction of an unambiguous **state** antitrust statute. The Supreme Court clearly expressed the view that state antitrust law is not pre-empted by federal antitrust law, *ARC America*, 490 U.S. at 105–106, 109 S.Ct. 1661, and held that it is not contrary to federal law for states to permit suits filed by indirect purchasers. *Id.* at 102–103, 109 S.Ct. 1661. Specifically, the Court stated:

> It is one thing to consider the congressional policies identified in *Illinois Brick* and *Hanover Shoe* in defining what sort of recovery federal antitrust law authorizes; it is something altogether different, and in our view inappropriate, to consider them as defining what federal law allows States to do under their own antitrust laws.

*Id.* at 103, 109 S.Ct. 1661. It follows, then, that indirect purchasers may have a cause of action under state law, while simultaneously not having a cause of action under federal antitrust law. Given this guidance from the Court in *ARC America*, I conclude Maryland state law provides for indirect purchaser suits.

I also part ways with the principal authority the majority uses for support of its determination on appellants' MATA claim. The majority relies on the Court of Appeals's decision in *State v. Jonathan Logan, Inc.*, 301 Md. 63, 482 A.2d 1 (1984), as support for its conclusion that section 11–209(b) bars suits by private indirect purchasers. In *Logan*, the State Attorney General brought suit on behalf of private citizens, contrary to the "real party in interest" rule. *Id.* at 77, 482 A.2d 1. The Court of Appeals adopted the rationale of an out-of-state case that, "if the state is to maintain an action in its

*parens patriae* capacity, initially facts must show that the state has an interest 'independent of and behind the titles of its citizens.' " *Id.* at 73, 482 A.2d 1. The Court did not even address the indirect purchaser issue presented in this appeal.

When other appellate courts have construed their state antitrust statutes containing language similar to MATA, they reached the exact opposite conclusion the majority reaches here. In *Hyde v. Abbott Labs., Inc.*, 123 N.C.App. 572, 473 S.E.2d 680, 683 (1996), the court held that it could, consistent with the Supremacy Clause of the United States Constitution, allow an indirect purchaser to sue under North Carolina's antitrust laws. The Tennessee appellate court reached the same conclusion about its antitrust statutes. *Blake v. Abbott Labs., Inc.*, 1996 WL 134947, 1996 Tenn.App. LEXIS 184, 192 (Tenn.Ct.App.1996). These cases reflect a trend among the states to complement federal antitrust law and permit indirect purchasers to bring antitrust lawsuits. *See, e.g., Minnesota ex rel. Humphrey v. Philip Morris, Inc.*, 551 N.W.2d 490 (Minn. 1996); *Cellular Plus, Inc. v. Superior Court*, 14 Cal.App.4th 1224, 18 Cal.Rptr.2d 308 (Cal.Ct.App.1993); *see also Gaebler v. New Mexico Potash Corp.*, 285 Ill.App.3d 542, 221 Ill.Dec. 707, 676 N.E.2d 228 (1997) (permitting only the state attorney to bring indirect purchaser suits).

In sum, allowing indirect purchasers to sue for MATA violations reflects the legislative purpose that such violations be deterred, and gives **all** aggrieved consumers the means to redress those violations. Accordingly, I believe the proper disposition of this case should have been to reverse the decision of the trial court on that issue and remand for further proceedings.