**David FISHER, Trading as Fisher's the True Value Hardware, Plaintiff,**

v.

**Gurdon M. WATTLES, Gurdon B. Wattles, American Manufacturing Co., Inc., Bolen Holding Company, Inc., Columbian Rope Company, Inc., Tubbs Cordage Company, Inc., Wall Industries, Inc., Wellington Leisure Products, Inc. trading as Wellington Puritan Mills, Defendants.**

Civ. No. 84–1422.

United States District Court, M.D. Pennsylvania.

March 22, 1985.

David Berger and H. Laddie Montague, Philadelphia, Pa., for plaintiff.

Mark L. Davidson, Washington, D.C., for defendants.

## MEMORANDUM AND ORDER

CONABOY, District Judge.

The above-captioned matter was initiated via a complaint filed October 23, 1984. The legal basis for said complaint is 15 U.S.C. § 1, a portion of the Sherman Anti-Trust Act (hereinafter the Act). The complaint alleges that the various defendants acted in an illegal combination to fix the price of rope. Plaintiff sues on its own behalf and on behalf of all others similarly situated. Plaintiff opines that the appropriate members of the class can easily be identified by examining the sales records of the Defendant firms since the beginning of 1970 when the price-fixing activity allegedly began. Rather curiously, the only Defendant which has responded to this complaint until now is Columbian Rope Company (hereinafter Columbian). It is Columbian's motion to dismiss this claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure which we now consider. The movant has briefed its motion and Plaintiff Fisher (hereinafter Fisher) has submitted a memorandum in opposition thereto. Therefore, this motion is ripe for decision.

A Rule 12(b)(6) motion compels us to look at this complaint in the light most favor-

able to Fisher. *Jenkins v. McKeithen*, 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969). Every doubt must be resolved in the Plaintiff's behalf as to whether his complaint states a valid claim for relief. *Schuler v. U.S.*, 617 F.2d 605 (1979). Rule 12(b)(6) motions should be granted only in those cases where allegations made in the complaint demonstrate that there is an insuperable bar to relief. *Thomas W. Garland, Inc. v. City of St. Louis*, 596 F.2d 784 (1979). This is such a case.

■ There is no dispute that this antitrust action will be controlled by the doctrine espoused in *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977), and reiterated in *Blue Shield of Virginia v. McCready*, 457 U.S. 465, 102 S.Ct. 2540, 73 L.Ed.2d 149 (1982). These cases leave no doubt that remote purchasers have no cause of action under the terms of the Act except in two narrowly-defined, exceptional situations.[1] These are: (a) where the remote purchaser has a pre-existing, cost-plus contract for fixed quantities of goods; and (b) where either the alleged violator or the remote purchaser owns or exerts control over the intermediary. Fisher's own pleadings demonstrate to the satisfaction of this Court that it fits into neither of these exceptional circumstances.

As regards the first exception, that for those remote purchasers with pre-existing, cost-plus contracts for fixed quantities of goods with the direct purchaser, we must note that certain affidavits presented by Columbian cast considerable doubt on whether Fisher had a *bona fide* cost-plus contract[2] in any sense with the direct purchaser, Cotter Company of Chicago (hereinafter Cotter). That, nevertheless, is not a question we need explore extensively since Fisher discloses that it had no agreement

---

**1.** Fisher admits that it is a remote purchaser. See Docket Item 19 at page 2.

**2.** Defined in Black's Legal Dictionary as "One which fixes the amount to be paid the contrac-

tor on a basis, generally, of the cost of the material and labor, plus an agreed percentage thereof."

for a *fixed quantity* of goods from Cotter.[3] The *Illinois Brick* Court saw fit to include this *fixed quantity* stricture when it carved out this exception to the general rule that remote purchasers have no anti-trust cause of action. Moreover, the Court of Appeals for the Third Circuit has emphasized the indispensable nature of an agreement for a *fixed quantity* of goods as part-and parcel of the cost-plus exception to *Illinois Brick.* See *Mid-West Paper Products Co. v. Continental Group, Inc.,* 596 F.2d 573, 578 (1979). Therefore, it is quite clear that Fisher cannot logically characterize itself to be within the ambit of the cost-plus exception.

To fall within the realm of the second exception to the general rule of *Illinois Brick,* Fisher must show that it owns or exerts such significant control over Cotter as to be virtually the same entity. The "ownership or control" exception was mentioned only in a footnote [4] to *Illinois Brick* which directed the reader to *Perkins v. Standard Oil Company,* 395 U.S. 642, 648, 89 S.Ct. 1871, 1874, 23 L.Ed.2d 599 (1969). Since the type of control discussed in *Perkins,* supra, was majority stock ownership in a corporation, we think the inference is clear that the *Illinois Brick* Court contemplated this type of control when it carved out this second exception. Fisher, on the other hand, claims to fit into this exception by virtue of the fact that it "has retained the right whether or not to purchase rope." [5] This, Fisher reasons, transforms Cotter into a mere agent sufficiently under its control to justify an interpretation that Fisher is tantamount to a direct purchaser from Columbian. Apart from the fact that this reasoning requires a rather imagina-

tive view of the law of agency,[6] our reading of *Illinois Brick* and *Perkins* persuades this Court that the Supreme Court did not contemplate this manner of fitting into the "ownership or control" exception. Clearly, what the Supreme Court contemplated was some element of corporate control, a type of control Fisher does not allege, much less demonstrate.

 A final card played by Fisher to prevent the dismissal of its complaint is its contention that " ... assuming *arguendo,* plaintiff's status as an indirect purchaser, such purchasers have standing to bring claims for injunctive relief as opposed to claims for treble damages." [7] Fisher neither cites case law in support of this position nor specifies what type of injunctive relief it might potentially pursue. We note that the grant of injunctive relief is reserved to extraordinary circumstances and that, absent some specificity in pleading as to the sort of injunctive relief Fisher seeks, the possibility that it might pursue such is not enough to prevent dismissal of its claim.[8]

To synthesize, Fisher admits that it never purchased rope directly from Columbian and that it did not have a cost-plus contract for a *fixed quantity* of goods with Cotter. Moreover, Fisher makes no allegation that it has any degree of *corporate* control over Cotter. This combination of facts makes it impossible, in this Court's view, for Fisher to state a claim compatible with the doctrine of *Illinois Brick* and its progeny. Accordingly, we issue the following.

3. See Docket Item 19 at page 10.

4. 431 U.S. 720, 736, 97 S.Ct. 2061, 2069, 52 L.Ed.2d 707 (note 16).

5. Docket Item 19 at page 10.

6. "One who contracts to acquire property from a third person and convey it to another is the agent of the other only if it is agreed that he is to act primarily for the benefit of the other and not for himself." *2d Restatement of the Law of*

*Agency,* Chapter 1, § 14K. Since it is eminently clear that Cotter's predominant concern is not the benefit of Fisher or any of its other customers, we find that Cotter is not merely an agent of Fisher.

7. See Docket Item 19 at page 2.

8. We point out that there is the possibility for this case to be re-opened should Fisher's vague allusions crystallize into something more focused.