2002 OK CIV APP 120

**Jonathan C. MAJOR, on his own behalf and on behalf of those similarly situated, Plaintiff/Appellant,**

v.

**MICROSOFT CORPORATION, a Washington Corporation, Defendant/Appellee.**

**No. 97,888.**

Court of Civil Appeals of Oklahoma, Division No. 3.

Sept. 6, 2002.

Certiorari Denied Nov. 19, 2002.

Donald L. Kahl, T. Lane Wilson, Anthony J. Jorgenson, Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C., Tulsa, OK, and Michael E. Smith, Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C., Oklahoma City, OK, for Plaintiff/Appellant.

Kenneth N. McKinney, Keith D. Tracy, Ronald L. Walker, McKinney & Stringer, P.C., Oklahoma City, OK, and David B. Tulchin, Joseph E. Neuhas, Sullivan and Cromwell, New York, NY, for Defendant/Appellee.

Opinion by CAROL M. HANSEN, Presiding Judge.

¶ 1 Plaintiff, Jonathan C. Major, purchased a Windows 98 operating system from Office Depot in Tulsa County. Upon installing this system on his computer, Major was required to register his ownership as an end user licensee of the system. He later purchased a new computer from Gateway in January of 2000. Windows 98 was pre-installed on that computer. Before using the system, he was again required to register with Microsoft.

¶ 2 Major originally filed this action against Defendant Microsoft in Tulsa County, Oklahoma, district court seeking damages for its violation of the Oklahoma Antitrust Reform Act. 79 O.S. Supp.2000 §§ 201 et seq. The trial court granted Microsoft's motion to dismiss, but allowed Major to replead. Major filed an amended petition seeking similar damages but including violations of the Oklahoma Uniform Commercial Code, 12A O.S. Supp.2000 § 2–302, and the Oklahoma Consumer Protection Act, 15 O.S. Supp.2000 §§ 751 et seq.

¶ 3 After removal to federal court and return to Oklahoma, the trial court dismissed the action pursuant to Microsoft's renewed motion to dismiss. Major now appeals the dismissal.

¶ 4 Microsoft is a for-profit corporation, organized and existing under the laws of the State of Washington. It focuses primarily on developing and licensing computer software. It markets and licenses its Windows 98 operating system for Intel-based personal computers throughout the United States, including the State of Oklahoma. Major complained Microsoft possessed monopoly power, including the power to control price and to exclude competition. He alleged Microsoft had unlawfully sought to acquire, maintain and expand its monopoly power by anti-competitive and unreasonable exclusionary conduct. As a result, Microsoft knowingly and intentionally licensed its Windows 98 operating system for Intel-based personal computers, without regard to competition, at a monopoly price in excess of that which Microsoft would have been able to charge in a competitive market. Therefore, Major claims all members of the class similarly situated are entitled to damages according to proof as to the difference between a competitive price and the unlawful monopoly price that they incurred as end user licensees.

¶ 5 In 1977, the United States Supreme Court decided the case of *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707. That decision studied the issue of standing to sue for treble damages under the Clayton Act, 15 U.S.C.A. § 15 (1976). In *Illinois Brick*, the State of Illinois brought suit against concrete block manufacturers alleging price fixing in violation of § 4 of the Clayton Act. That section provides "(a)ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may bring suit to recover damages sustained by him." The Court held the state, as an indirect purchaser, did not have standing to pursue the action because it did not buy concrete blocks directly from the manufacturers, and thus was not the party "injured in his business or property within the meaning of section 4 of the Clayton Act." The Court drew a line at which the law will not permit remote antitrust claims to be asserted. This bright line has become known

as the "indirect-purchaser rule." [1]

¶ 6 Ten years later the United States Supreme Court clarified its ruling in *Illinois Brick* in *California v. ARC Am. Corp.*, 490 U.S. 93, 109 S.Ct. 1661, 104 L.Ed.2d 86. It held that nothing in federal antitrust legislation prevented the states from allowing indirect purchasers to bring antitrust actions under state statutes. The Court stated the statutes of Alabama, California and Minnesota (the plaintiffs) expressly allowed indirect purchasers to sue. That decision, however, did not create a cause of action for indirect purchasers, but rather merely authorized the states to provide a cause of action for indirect purchasers based on their states' antitrust laws. It concluded Congress had not preempted the field of antitrust law, but rather intended the federal antitrust laws to supplement, not displace, state antitrust remedies. *See, Comes v. Microsoft Corporation,* 646 N.W.2d 440 (Iowa.2002) and cases cited therein.[2] Since that time other jurisdictions have interpreted their state antitrust laws to give standing to indirect purchasers. *Bunker's Glass Company v. Pilkington,* 202 Ariz. 481, 47 P.3d 1119 (Ariz.App.2002).

¶ 7 Section 205 of the Oklahoma Antitrust Reform Act, provides that any person who is injured in his or her business or property by a violation of the act may obtain appropriate injunctive or other equitable relief and monetary damages and shall recover threefold the damages sustained, and the cost of suit, including a reasonable attorney fee. This is almost identical to the language of the federal act quoted above.

¶ 8 The Oklahoma Legislature has spoken. The controlling section of the Oklahoma Act is the final section, § 212. That section states:

The provisions of this act shall be interpreted in a manner consistent with Federal Antitrust Law 15 U.S.C., Section 1 et seq. and the case law applicable thereto.

¶ 9 Accordingly, under § 212, we are required to apply the holdings of *Illinois Brick* to the present appeal.

¶ 10 Major does not actively argue this Court should not follow *Illinois Brick.* In his briefs at trial Major makes two arguments in defense to Microsoft's motion to dismiss. He claims because he was required to register as an end user licensee, he is a direct purchaser, not an indirect one. He argues he suffered a unique injury as a direct result of Microsoft's practices. He further points out *Illinois Brick* provides for three exceptions to the indirect purchaser rule: (a) Vertical Price–Fixing Conspiracy, (Microsoft in conjunction with Compac, Dell and NEC); (b) an Ownership or Control exception; and, (c) the cost-plus contract exception. He also argues the trial court erroneously dismissed his claims under the Uniform Commercial Code, 12A O.S. Supp.2000 § 2–302, and the Oklahoma Consumer Protection Act.

¶ 11 The trial court in its journal entry dismissing Major's case, attached and incorporated herein, made a detailed legal analysis of these claims. We see no reason to repeat that analysis here. Rule 1.202, Oklahoma Supreme Court Rules, 12 O.S. Supp. 2000, Ch. 15 App. provides that in any case in which the court determines after argument or submission on the briefs that no reversible error of law appears, and (d) the opinion or findings of fact and conclusions of law of the trial court adequately explains the decision, the court may affirm by an opinion citing this rule. We have examined the record, more particularly the briefs of the parties in the trial court, and hold the trial court should be affirmed under this rule.

¶ 12 AFFIRMED.

ADAMS and MITCHELL, JJ. CONCUR.

---

1. Hundreds of state and federal cases, too numerous to mention, have cited *Illinois Brick.*

2. *Comes,* in a footnote, refers to *In re Microsoft Corporation Antitrust Litigation,* 127 F.Supp.2d 702 (D.Md.2001). That decision held the plaintiffs as indirect purchasers were barred from bringing claims for alleged overcharges under federal law, pursuant to *Illinois Brick,* but reserved comment on whether *Illinois Brick* was incorporated into the state law of a number of states.

EXHIBIT "A"

## ORDER

This matter comes before the Court on the Renewed Motion to Dismiss of defendant Microsoft Corporation ("Microsoft").

On November 17, 2000, this Court entered an order dismissing the original Petition: The Court concluded that the claims as originally pled were barred by the rule of *Illinois Brick Co. v. Illinois,* 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977), barring antitrust damage claims by indirect purchasers. However, the Court granted plaintiff Jonathan C. Major ("Major") the opportunity to replead and, on December 14, 2000, Major filed his First Amended Petition. On January 12, 2001, Microsoft removed the case to the United States District Court for the Northern District of Oklahoma. The Judicial Panel on Multidistrict Litigation then issued a Conditional Transfer Order, transferring the case to the United States District Court for the District of Maryland, for consolidation with all other federal court putative class action antitrust actions pending against Microsoft. The U.S. District Court for the Northern District of Oklahoma subsequently remanded the case to this Court, and Microsoft filed its Renewed Motion to Dismiss.

In his First Claim for Relief in the First Amended Petition, Major claims Microsoft has violated Oklahoma's Antitrust Reform Act, 79 O.S. §§ 201, *et seq.* by monopolizing trade and commerce relating to operating systems for Intel-based personal computers within the State of Oklahoma. Major further alleges Microsoft has conspired with distributors to fix prices for its Windows 98 operating system at an unlawful monopoly price. In his Second Claim for Relief, Major and the putative class claim entitlement to a modification of the price provisions of their contracts for the purchase and use of Windows 98 under the "unconscionability" section of the Oklahoma Uniform Commercial Code

("UCC"), 12A O.S. § 2–302. In his Third Claim for Relief, Major contends that Microsoft's conduct and business practices constitute unfair and deceptive business practices as those terms are defined in the Oklahoma Consumer Protection Act ("CPA"), 15 O.S. §§ 751, *et seq.* and that he and each member of the putative class is entitled to recover damages therefor.

A motion to dismiss for failure to state a cause of action will not be sustained unless it should appear without doubt that the plaintiff can prove no set of facts in support of the claim for relief. 12 O.S. § 2012, Committee Comment; *Brock v. Thompson,* 1997 OK 127, ¶ 7, 948 P.2d 279, 284. Under most circumstances a plaintiff's petition is only dismissible for want of a cognizable legal theory of liability or for insufficient facts under the advanced theory. *Lockhart v. Loosen,* 1997 OK 103, ¶ 5, 943 P.2d 1074, 1078. A petition must not be dismissed for failure to state a legally cognizable claim unless the allegations indicate beyond any doubt that the litigant can prove no set of facts which would entitle him to relief. *Frazier v. Bryan Memorial Hospital Authority,* 1989 OK 73, ¶ 13, 775 P.2d 281, 287.

This Court previously ruled that the *Illinois Brick* direct purchaser rule was incorporated into Oklahoma law when Oklahoma enacted its Antitrust Reform Act (the "Act") in 1998. Federal antitrust statutes were adopted almost verbatim. The Oklahoma legislature manifested its clear intent to harmonize the Act with federal antitrust law when it enacted § 212, which states:

> The provisions of this act shall be interpreted in a manner consistent with Federal Antitrust Law 15 U.S.C., Section 1 et seq. and the case law applicable thereto.

Oklahoma has chosen not to legislatively overturn the direct purchaser rule. Therefore, this Court concluded—and again concludes—that the *Illinois Brick* direct purchaser rule is controlling law in Oklahoma.[1]

---

**1.** Under *Illinois Brick,* indirect purchasers lack standing to proceed. The rationale behind the rule, as explained by the United States Supreme Court, is that "[t]he direct purchaser rule serves, in part, to eliminate the complications of apportioning overcharges between direct and indirect

purchasers." *Kansas v. UtiliCorp United, Inc.,* 497 U.S. 199, 208, 110 S.Ct. 2807, 111 L.Ed.2d 169 (1990). It also "serves to eliminate multiple recoveries." *Id.* at 497 U.S. 199, 212, 110 S.Ct. 2807, 111 L.Ed.2d 169. Finally, the rule provides the direct purchasers, those in the best

The Court rejected—and again rejects—Major's argument that the End User Licensing Agreement ("EULA") made Major a direct purchaser by giving him a direct contractual relationship with Microsoft. The EULA does not make Major or those similarly situated "direct buyers." Major did not purchase his product directly from Microsoft. The Court concludes that the relationship established through the EULA between Microsoft and the end user is insufficient to make the end user a direct purchaser for the purposes of *Illinois Brick. See, e.g. Minuteman, L.L.C. v. Microsoft Corp.*, 795 A.2d 833 (N.H.2002); *Siena v. Microsoft Corp.*, 796 A.2d 461 (R.I.2002); *Vacco v. Microsoft Corp.*, 260 Conn. 59, 793 A.2d 1048 (Conn. 2002); and *Pomerantz v. Microsoft Corp.*, 50 P.3d 929 (Colo.App.2002).

Major asserts three exceptions to the *Illinois Brick* direct purchaser rule: 1) a vertical price-fixing conspiracy exception; 2) the control exception, applicable to purchases from an entity owned or controlled by the antitrust violator; and 3) the cost-plus contract exception.

### 1. *Vertical Price–Fixing Conspiracy.*

Major alleges that Microsoft entered into "a vertical price-fixing conspiracy" with the three largest PC manufacturers—Compaq, Dell and NEC. First Amended Petition, ¶ 50.

*Illinois Brick* does not mention a "vertical conspiracy" exception. Judge Posner, writing for a Seventh Circuit panel, wrote that "*UtiliCorp* implies that the only exceptions to the *Illinois Brick* doctrine are those stated in *Illinois Brick* itself." *In re Brand name Prescription Drugs Antitrust Litigation,* 123 F.3d 599, 605 (7th Cir.1997).

Even if one assumes a vertical price-fixing conspiracy exception is cognizable, it applies only to one who purchases an overpriced good from a member of the price-fixing conspiracy, as such an individual arguably bears the overcharge directly and the policy factors

position to observe an alleged violator's conduct, with incentives to bring private antitrust actions and thus promotes the vigorous enforcement of the antitrust laws. *Id.* at 214–215, 110 S.Ct. 2807. The Court recognizes that its decision in

underlying *Illinois Brick* are not at issue. *In re Mid–Atlantic Toyota Antitrust Litigation,* 516 F.Supp. 1287, 1294–5 (D.Md.1981). In this case, Major alleges he purchased a copy of Windows 98 from Office Depot and a computer with Windows 98 preinstalled from Gateway. Major does not allege a purchase from a member of the conspiracy; his allegations are insufficient to avoid the direct purchaser rule.

Alternatively and in addition, Major's First Amended Petition fails because he has not joined the alleged co-conspirators. *See, e.g. McCarthy v. Recordex Service, Inc.,* 80 F.3d 842, 854–55 (3rd Cir.1996). The narrow exception to the rule requiring joinder, set forth in *Lowell v. American Cyanamid Co.,* 177 F.3d 1228 (11th Cir.1999), is inapplicable here. In *Lowell,* no problems of double recovery were present because only one illegal act (the vertical conspiracy) was present and only one set of potential plaintiffs existed. Here, Major alleges a separate antitrust violation—monopolization of the market for Windows 98—which potentially caused injury to direct purchasers other than the alleged co-conspirators. Thus, this case presents problems of double recovery to which the *Illinois Brick* doctrine is applicable.

Alternatively and in addition, Major has failed to allege a vertical conspiracy to fix prices at which Major and the putative class purchased the products (the PCs) sold by the original equipment manufacturers ("OEMs").

### 2. *The Ownership or Control Exception.*

The Court in *Illinois Brick* noted, in a footnote, that in some situations an indirect purchaser might be permitted to maintain an antitrust action "where the direct purchaser [in this case the OEMs and/or distributors of upgrade CD ROMS] is owned or controlled by its customer." *Illinois Brick,* 431 U.S. at 736 n. 16, 97 S.Ct. at 2070 n. 16, 52 L.Ed.2d at 719 n. 16. Courts have narrowly construed this exception and limited it to relationships involving such functional economic

*Illinois Brick* often denies relief to consumers who have paid inflated prices because of their status as indirect purchasers. *UtiliCorp,* 497 U.S. at 211–212, 110 S.Ct. 2807.

or other unity between the direct purchaser and either the defendant or the indirect purchaser that there effectively has been only one sale. *Jewish Hospital Ass'n v. Stewart Mech. Enterp., Inc.,* 628 F.2d 971, 975 (6th Cir.1980). The Seventh Circuit has limited the control exception to situations where a defendant controls the direct purchasers "through interlocking directorates, minority stock ownership, loan agreements that subject the wholesalers to the manufacturers' operating control, trust agreements, and other modes of control separate from ownership of a majority of the wholesalers' common stock." *In re Brand Name Prescription Drugs Antitrust Litigation,* 123 F.3d 599, 605 (7th Cir.1997). Another federal court has held that "[t]o fall within the realm of the [ownership or control] exception to the general rule of Illinois Brick, [the indirect purchaser] must show that [a party] owns or exerts such significant control over [the direct purchaser] as to be virtually the same entity." *Fisher v. Wattles,* 639 F.Supp. 7, 9 (M.D.Pa.1985).

In the present case, Major has alleged that Microsoft dictates *the price that it charges OEMs* for Windows depending upon the degree to which the individual OEMs have complied with Microsoft's wishes in pursuing its "jihad" in the "browser war." First Amended Petition, ¶ 61. Major does not allege that Microsoft owns or directly controls the OEMs and distributers of upgrade CD ROMS or that Microsoft controls or determines the pricing of Windows 98 by resellers. In short, Major has not alleged such functional economic or other unity that there effectively has been only one sale. *Pomerantz v. Microsoft Corp.,* 50 P.3d 929, 935 (Colo.App.2002). Absent such an allegation, the rationale behind *Illinois Brick* clearly applies—the finder of fact would have to apportion the alleged overcharge between the OEMs and the indirect purchasers. "That's just what the Supreme Court in ... *Illinois Brick* ... told the federal courts not to do." *In re Brand Name Prescription Drugs Antitrust Litigation,* 123 F.3d 599, 606 (7th Cir.1997). Unless the alleged control extends to the price charged for operat-

ing systems or computers, the "[p]roblems of proving the amount of the pass-on remain undiminished." *Jewish Hospital,* 628 F.2d at 975. Accordingly, the "control" exception to the *Illinois Brick* rule does not save the First Amended Petition.

3. *The Pre–Existing Cost–Plus Contract Exception.*

In *Illinois Brick,* the Supreme Court observed:

> In a [pre-existing cost-plus contract] situation, the [direct] purchaser is insulated from any decrease in its sales as a result of attempting to pass on the overcharge, because its customer is committed to buying a fixed quantity regardless of price. The effect of the overcharge is essentially determined in advance, without reference to the interaction of supply and demand that complicates the determination in the general case. 431 U.S. at 736, 97 S.Ct. 2061.

Plaintiff alleges, on information and belief, that OEMs and distributors "have passed all of Microsoft's monopoly price on to Plaintiff and the Class" and, as such, the transaction is "the functional equivalent of a cost-plus contract." Amended Petition, ¶ 69. Plaintiff does not allege a pre-existing cost-plus contract. If a seller's recovery of costs equates to a "pre-existing cost-plus contract," the exception to *Illinois Brick* would swallow the rule. As the Supreme Court explained in *Kansas v. UtiliCorp,* 497 U.S. 199, 218, 110 S.Ct. 2807, 2817–18, 111 L.Ed.2d 169 (1990), where utilities were required by law to pass on all of their costs, "we might allow indirect purchasers to sue only when, by hypothesis, the direct purchaser will bear no portion of the overcharge and otherwise suffer no injury." The Supreme Court held that even where a utility raised its prices to cover its costs, the Court could not ascertain its precise injury because the utility's customers made no commitment to purchase any particular quantity of gas and the utility itself had no guarantee of any particular profit. The utility could claim injury as a consequence of elasticity of demand—the decreased volume of sales caused by the higher prices the utility had to charge. The Court went further to state that "even if the utility custom-

ers had a highly inelastic demand for natural gas ... the need to inquire into the precise operation of market forces would negate the simplicity and certainty that could justify a cost-plus contract exception." If the legally-required pass-on in *UtiliCorp* did not qualify as a cost-plus contract, Major's conclusory allegations of pass-on cannot do so.

### 4. Plaintiff's Claims of Unique and Direct Injury.

Major argues he has standing because Microsoft has caused him to suffer unique injury as a direct result of its practices. Specifically, Major alleged that end-users "were deprived of the benefits of competition including, but not limited to, technological innovation, market choice, product variety, and substitutable supply, and were forced to purchase multiple copies of Windows." ¶ 80, First Amended Petition. Major also alleges that the illegal tie-in of Internet Explorer to the operating system resulted in multiple injuries to all Windows 98 purchasers. Such injuries include: loss of speed and memory caused by the technological tie; loss of operating system stability and increased susceptibility to viruses or security breaches; and deprivation of consumer choice. The MDL Court assigned to Microsoft antitrust litigation has rejected claims for injury to the market as a whole, including the alleged denial of better, technologically superior products. *In re Microsoft Corp. Antitrust Litigation*, 127 F.Supp.2d 702, 710–711 (D.Md.2001). The MDL Court held that consumer allegations of denial of the benefit of technologically superior products and competition are allegations of "a generalized societal harm and, under well-established principles, the suffering of such damage is insufficient to confer standing." *Id.* at 711; *see also Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 340 n. 8, 110 S.Ct. 1884, 109 L.Ed.2d 333 (1990) ("[T]he antitrust injury requirement cannot be met by broad allegations of harm to the "market" as an abstract entity").

Major's claim of "performance degradation" resulting from the tie-in of Internet Explorer is simply a claim that he should have obtained more than he did and that Microsoft charged too much for the product. The measure of damages is the amount of the overcharge, and the problems identified in *Illinois Brick* persist.

### 5. Major's Claim for Modification of an Unconscionable Contract Term.

Section 2–302 of the Uniform Commercial Code is not a basis for affirmative relief. *Cowin Equip. Co. v. General Motors Corp.*, 734 F.2d 1581, 1582 (11th Cir.1984); *Best v. United States Nat'l Bank*, 78 Or.App. 1, 714 P.2d 1049, 1055–1056 (1986) (surveying cases in numerous states that § 2–302 is not a basis for an award of damages).

### 6. Major's Claim Under the Oklahoma Consumer Protection Act.

Major's claims under the Oklahoma Consumer Protection Act ("CPA") are predicated on the same factual allegations underlying Major's antitrust claim. As set forth above, the Oklahoma legislature has expressed the clear intention that Oklahoma's antitrust laws be interpreted in a manner consistent with federal antitrust law. Microsoft contends that indirect purchasers whose claims are barred under the antitrust laws should not be permitted to assert a claim under the CPA for the same allegedly anticompetitive conduct.

Upon consideration of the arguments an authorities presented by the parties, this Court concludes that the CPA should not extend to anticompetitive conduct and that Major should not be permitted under the law to avoid the United States Supreme Court's policy choices expressed in *Illinois Brick* by recasting his claims of anticompetitive conduct as a Consumer Protection Act claim. This particular issue must obviously be resolved by our appellate courts. Courts in other states have refused to permit an end-run around *Illinois Brick* by permitting other statutory claims upon the same factual allegations underlying the state antitrust claim. *Vacco v. Microsoft*, 260 Conn. 59, 793 A.2d 1048 (Conn.2002); *Blewett v. Abbott Laboratories*, 86 Wash.App. 782, 938 P.2d 842 (1997) ("[T]his is the same claim with a different label .... We will not interpret the

state antitrust law in a manner that 'rewards creative pleading at the expense of consistent application of legal principles.' ")

For the reasons set forth above, Defendant's Renewed Motion to Dismiss is granted.

IT IS SO ORDERED this 24th day of May, 2002.

/s/ Gregory K. Frizzell
GREGORY K. FRIZZELL, District Judge