Adams v. Aventis, S.A., 2003 NCBC 7

| | |
|---|---|
| **STATE OF NORTH CAROLINA** | **IN THE GENERAL COURT OF** |
| **COUNTY OF CRAVEN** | **JUSTICE** |
| | **SUPERIOR COURT DIVISION** |
| | **CASE NO. 01 CVS 2119** |

JOHN ADAMS d/b/a ADAMS SWINE, et al.   )
                                    )
                Plaintiffs,      )
                                    )
     v.                            )
                                    )
AVENTIS, S.A., et al.                  )
                                    ))
                Defendants.    )

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS

{1}    THIS MATTER is before the Court on defendants' motion to dismiss for lack of personal jurisdiction and failure to state a claim upon which relief may be granted. N.C.G.S. § 1A-1, Rule 12(b)(2) and (6). After considering the defendants' motions, plaintiffs' replies, defendants' replies in support, oral argument held on September 10, 2002, and for the below discussed reasons, the Court DENIES defendants' 12(b)(6) motion and certifies this Order for immediate appeal. At oral argument, the Court deferred ruling on defendants' 12(b)(2) motion until such time as either the time for appeal from this order has expired or a North Carolina appellate court rules on the certified interlocutory appeal.

> *Stubbs & Perdue, P.A., by Trawick H. Stubbs, Jr., Daniel Hobart, and Jason L. Hendren; Law Offices of George A. Barton by George A. Barton; for plaintiffs.*
>
> *Parker, Poe, Adams, & Bernstein, LLP, by William L. Rikard, Jr., for Defendants Aventis, S.A., Aventis Animal Nutrition, Inc., and Aventis Cropscience USA, Inc.*
>
> *Mayer, Brown, Rowe & Maw by Mary K. Mandeville and Robert B. Cordle, for Defendants BASF AG and BASF Corp.*
>
> *Robinson, Bradshaw & Hinson, P.A., by Everett J. Bowman and Lawrence B. Moore, III; Baker & Miller, PLLC by Donald I. Baker and Alice G. Glass; for Defendant Chinook Group Limited.*
>
> *Hunton and Williams by T. Thomas Cottingham, III and Daniel L. Tedrick for Defendants DCV, Inc. and Ducoa, LP.*
>
> *Helms Mulliss & Wicker, PLLC, by Peter J. Covington, William C. Mayberry and Jason D. Evans, for Defendants F. Hoffman-LaRoche, Ltd., Hoffman-LaRoche, Inc., and Roche Vitamins, Inc.*
>
> *Mayer, Brown, Rowe & Maw by Michael O. Ware; Rayburn Cooper & Durham, P.A., by James B. Gatehouse; for Defendants Alusuisse Lonza Group, Ltd., Lonza AG, and Lonza, Inc.*

### Background

{2}    Plaintiffs in this action are indirect purchasers of vitamin products manufactured by defendants. Plaintiffs filed this action on October 19, 2001, alleging violations of North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"). N.C.G.S. §§ 75-1, 75-1.1, and 75-2. Plaintiffs claim that

defendants conspired to fix prices and allocate market share, and committed other unlawful practices designed to inflate the prices of vitamins sold in North Carolina and elsewhere. Defendants have responded by moving to dismiss under Rule 12(b)(6) based on two grounds: first, that the instant action is abated by a prior pending class action filed in Mecklenburg County, *Nicholson v. F. Hoffman-La Roche Ltd.,* No. 99 CVS 3592 (Meck. Co. Sup. Ct. filed March 5, 1999), and a class action pending in the District of Columbia, *Giral v. F. Hoffman-La Roche Ltd.,* Civil Action No. 98 CA 7467 (District of Columbia Superior Court); and second, that plaintiffs, as indirect purchasers, lack standing under North Carolina's antitrust law, N.C.G.S. § 75-16.

{3}     Plaintiffs Circle "S" Ranch, Inc., Coharie Hog Farm, Inc., Coharie Mill & Supply Co., Garland Farm Supply, Inc., J&K Farms, Inc., J.C. Howard Farms, LLC, LL Murphrey, Company, NG Purvis Farms, Inc., Braswell Milling Company d/b/a Braswell Foods, Eastern Minerals, Inc., and Townsends, Inc. subsequently settled with and dismissed their claims against Aventis, S.A., Aventis Animal Nutrition, Inc., Aventis Cropscience USA, Inc., BASF AG, BASF Corp, F. Hoffman-La Roche, Ltd., Hoffman-LaRoche, Inc., Roche Vitamins, Inc., Alusuisse Lonza Group, Ltd., Lonza AG, and Lonza, Inc:

## Legal Standard

{4}     When ruling on a motion to dismiss under Rule 12(b)(6), the court must determine "whether, as a matter of law, the allegations of the complaint . . . are sufficient to state a claim upon which relief may be granted." *Harris v. NCNB*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987). In ruling on a motion to dismiss, the court must treat the allegations in the complaint as true. *Hyde v. Abbott Laboratories, Inc.*, 123 N.C. App. 572, 574-75, 473 S.E.2d 680, 682 (1996). The court must construe the complaint liberally and must not dismiss the complaint unless it appears to a legal certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim. *Id.* For purposes of a motion to dismiss, a copy of any written instrument attached as an exhibit to a pleading is considered part of the pleading. N.C. R. Civ. P. 10(c) (2001). Thus, the Court may consider exhibits attached to a complaint without converting a motion to dismiss into a motion for summary judgment. *See Praxair, Inc. v. Airgas, Inc.,* 1999 NCBC 5, at ¶ 6 (No. 98 CVS 8571, Mecklenburg County Super. Ct. May 26, 1999) (Tennille, J.)); *see also Governor's Club Inc. v. Governor's Club Ltd. P'ship,* 152 N.C. App. 240, 254, 567 S.E.2d 781, 790 (Aug. 20, 2002) (citing *Stanback v. Stanback,* 297 N.C. 181, 254 S.E.2d 611, *rev'd in part on other grounds,* 297 N.C. 181, 254 S.E.2d 611 (1979)).

## Abatement

{5}     According to *Clark v. Craven Regional Medical Authority,* 326 N.C. 15, 387 S.E.2d 168 (1990), a prior pending action will abate or end a second filed action under the following circumstances:

> The pendency of a prior action between the same parties for the same cause in a state court of competent jurisdiction works an abatement of a subsequent action either in the same court or in another court of the state having like jurisdiction. This is so because the court can dispose of the entire controversy in the prior action and in consequence the subsequent action is wholly unnecessary. By abating the second action, a multiplicity of actions is prevented.

*Id.* at 21, 387 S.E.2d at 171 (citations omitted). Our Supreme Court stated that abatement is proper where "the two actions present a substantial identity as to parties, subject matter, issues involved, and

relief demanded[.]" *Id.* at 21, 387 S.E.2d at 172.

{6}     Defendants argue that the instant case should be abated by a prior pending class action filed in Mecklenburg County, *Nicholson v. F. Hoffman-La Roche Ltd.,* No. 99 CVS 3592 (Meck. Co. Sup. Ct. filed March 5, 1999), and a class action pending in the District of Columbia, *Giral v. F. Hoffman-La Roche Ltd.,,* Civil Action No. 98 CA 7467 (District of Columbia Superior Court). The *Giral* action does not abate the instant action because it does not purport to certify a class in North Carolina. The *Giral* action applies only to the District of Columbia.

{7}     The *Nicholson* class is defined to include "all persons or entities present in the State of North Carolina who indirectly purchased vitamins, vitamin premixes, bulk vitamins, and/or other vitamin products manufactured by any of the defendants or their co-conspirators from January 1, 1989 to the present." (*Nicholson* Compl. ¶36). The *Nicholson* class has been certified for settlement purposes. As is their right, plaintiffs in the instant action have opted out of the *Nicholson* class settlement and chosen to pursue this individual action. As a general rule, one class action will abate a second class action. *See First Tennessee Bank, N.A. v. Snell,* 718 So.2d 20, 23-24 (Ala. 1998). Thus, the fact that a Cumberland County Superior Court Judge abated another class action in light of the pendency of the *Nicholson* class action does not support abatement of a suit maintained as an individual action. *See Picos v. Lonza AG.,* 99-CVS-5035.

### Indirect Purchaser

{8}     Defendants argue that plaintiffs are indirect purchasers and therefore do not have standing to bring an action against defendants for antitrust violations. This Court previously has recognized that it is bound by the holding in *Hyde v. Abbott Labs,* 123 N.C. App. 572, 473 S.E.2d 680, *rev. denied,* 344 N.C. 734, 478 S.E.2d 5 (1996), which recognizes indirect purchaser standing in North Carolina. *Bruggers v. Eastman Kodak Co.,* 2000 NCBC 3, at ¶ 17 (No. 97 CVS 11278, Wake County Super. Ct. Mar. 17, 2000) (Tennille, J.). In recognizing indirect purchaser standing, this Court stated:

> The *Hyde* decision is the only North Carolina appellate decision dealing with indirect purchaser standing. That case was settled after the Court of Appeal's decision and before review by the North Carolina Supreme Court. In *Hyde,* plaintiffs filed a class action against manufacturers of infant formula, alleging violations of North Carolina's antitrust laws. The purported class consisted of ultimate consumers who purchased infant formula from parties other than the manufacturer. The defendants filed a motion to dismiss alleging that plaintiffs were indirect purchasers and therefore lacked standing to sue under N.C.G.S. § 75-16. The Superior Court Granted the motion to dismiss, and plaintiffs appealed.
>
> The Court of Appeals reversed the Superior Court and found that under North Carolina's antitrust statute, an indirect purchaser may sue a manufacturer for antitrust violations. The Court of Appeals based this finding upon a review of the plain language of N.C.G.S. § 75-16. North Carolina's antitrust statute provides:
>
>> If any person shall be injured or the business of any person, firm or corporation shall be broken up, destroyed, or injured by reason of any act or thing done by any other person, firm or corporation in violation of the provisions of this Chapter, such person, firm or corporation so injured shall have a right of action on account of such injury done, and if damages are assessed in such case judgment shall be rendered in favor of

the plaintiff and against the defendant for treble the amount
fixed by the verdict.

*Id.* at ¶ 5-6 (internal citations omitted).

{9}     The current version of N.C.G.S. § 75-16 was amended in 1969 and again in 1996.  The 1969 Amendment changed the first sentence of the statute, which originally read "if the business of any person, firm or corporation shall be broken up. . . [,]" by adding the phrase "if *any person* shall be injured" to the beginning of the provision. (Emphasis added.)  In *Hyde,* our Court of Appeals found the addition of this language significant in that it evidenced an intent to expand the class of persons with standing to sue under Chapter 75 and thus provide a recovery "for all consumers," including indirect purchasers.  *Hyde,* 123 N.C. App. at 577-78, 473 S.E.2d at 684.

{10}    As originally enacted in 1913, the North Carolina antitrust statute was modeled after federal antitrust law, codified in Section 7 of the Sherman Act.  *An Act to Declare Illegal Trusts and Combinations in Restraint of Trade,* Ch. 41. § 14, 1913 Sess. Laws 66.  Section 7 was recodified as Section 4 of the Clayton Act.  15 U.S.C. § 15 (1914) ("Clayton Act").  Both federal and state law has been amended throughout the years; however, the language of the North Carolina statute has remained similar to the language of the Clayton Act.

{11}    Like North Carolina's antitrust statute, Section 4 of the Clayton Act grants standing to prosecute private causes of action for alleged violations of federal antitrust laws.  In 1968, the Supreme Court held that defendants in horizontal price-fixing cases would not be permitted to prove that direct purchaser plaintiffs passed on all or part of the overcharge to their customers unless the direct purchaser sold pursuant to cost-plus contracts.  *Hanover Shoe, Inc. v. United Shoe Machinery Corp.,* 392 U.W. 481 (1968).  This holding allowed direct purchasers to enforce federal antitrust laws regardless of whether they absorbed or passed on the overcharge.

{12}    Eleven years later, the Supreme Court held that if a passing-on defense cannot be raised by defendants, claims based on such passing on likewise cannot be asserted by indirect purchasers.  *Illinois Brick v. Illinois,* 431 U.S. 720 (1977).  Therefore, under federal law, because an indirect purchaser cannot establish a legally cognizable injury, only direct purchasers may pursue an overcharge claim arising from an antitrust violation.

{13}    After the *Illinois Brick* decision, a number of states adopted *Illinois Brick* repealer statutes which specifically permitted indirect purchaser standing.  *See, e.g., Union Carbide Corp. v. Superior Court*, 36 Cal. 3d 15, 679 P.2d 14, 17, 201 Cal. Rptr. 580 (Cal. 1984) (observing that "California's 1978 amendment . . . in effect incorporates into the Cartwright Act the view of the dissenting opinion in *Illinois Brick* that indirect purchasers are persons 'injured' by illegal overcharges passed on to them in the chain of distribution"); *Comes v. Microsoft Corp.*, 646 N.W.2d 440, 448 (Iowa 2002) (stating that nineteen states, the District of Columbia, and Puerto Rico have adopted statutes expressly authorizing suits by indirect purchasers, and citing statutes from California, Hawaii, Illinois, Kansas, Maryland, Michigan, Minnesota, New Mexico, New York, South Dakota, Wisconsin, and the District of Columbia); *A&M Supply Co. v. Microsoft Corp.*, 252 Mich. App. 580, 654 N.W.2d 572, 595 (Mich. Ct. App. 2002) (holding that Michigan's adoption of an *Illinois Brick* repealer law incorporating "directly or indirectly" language to describe the injury allowed suit by direct or indirect purchasers).

{14}    In a 1989 challenge to repealer statutes, the Supreme Court held that federal antitrust laws did not pre-empt state antitrust laws and that state laws permitting indirect purchasers to receive damages were

not in conflict with federal antitrust laws. *California v. ARC America Corp.*, 490 U.S. 93 (1989).

{15}  Some states reacted to *Illinois Brick* by allowing indirect purchaser actions to be brought only by the State Attorney General. *See, e.g.*, *Gaebler v. N.M. Potash Corp.*, 285 Ill. App. 3d 542, 676 N.E.2d 228, 230, 221 Ill. Dec. 707 (Ill. Ct. App. 1996) (holding that the Illinois Antitrust Act's provision that "no person other than the Attorney General of this State shall be authorized to maintain a class action in any court of this State for indirect purchasers asserting claims" precluded private plaintiffs' class action on behalf of indirect purchasers); *Davidson v. Microsoft Corp.*, 143 Md. App. 43, 792 A.2d 336, 341 (Md. Ct. App. 2002) (noting that the legislature had rejected a bill that would have repealed the *Illinois Brick* principle as to all plaintiffs but had, instead, later passed a limited amendment allowing governments to sue regardless of whether they dealt "directly or indirectly" with the violator); *Siena v. Microsoft*, 796 A.2d 461 (R.I. 2002) (noting that the Rhode Island antitrust statute limited the right to bring damages action on behalf of indirect purchasers to the Attorney General as *parens patriae*).

{16}  In states such as North Carolina where the legislature has not clearly indicated an intent to adopt or repeal the holding in *Illinois Brick*, courts have had to look elsewhere in their antitrust statutes for guidance.

*{17}*  In *Major v. Microsoft Corp.*, 2002 OK CIV APP 120, 60 P.3d 511 (Okla. Ct. App. 2002), the court found dispositive language in the Oklahoma Antitrust Reform Act (1) describing those persons entitled to relief under the state statute in almost identical terms as federal law, the Clayton Act, "any person who is injured in his or her business or property by a violation of the act," and (2) the controlling section of the Oklahoma Act stating that the provisions of that act "shall be interpreted in a manner consistent with Federal Antitrust Law 15 U.S.C. § 1 et seq. and the case law applicable thereto." 60 P.3d at 513. The court interpreted these two sections as requiring it to apply *Illinois Brick*. *Id.*

{18}  In *Vacco v. Microsoft Corp.*, 260 Conn. 59, 793 A.2d 1048 (Conn. 2002), the court found determinative a 1992 amendment to that state's antitrust act directing that the courts be "guided by interpretations given by the federal courts to federal antitrust statutes." *Id.* at 1056. After careful analysis of *Illinois Brick* and other federal cases relevant to the issues raised in the case before it, the court determined that allowing only those consumers who purchase directly from the antitrust defendant to bring suit ensured harmony between the state act and federal statutes. The court distinguished cases from other states, including Tennessee, on the basis that those state statutes did not require that their state courts interpret those statutes consistently with federal interpretation. *Id.* at 1059; *see also Siena*, 796 A.2d at 461 (explaining that Rhode Island statute required construction in harmony with judicial interpretations of comparable federal antitrust statutes).

{19}  In some states, the courts have had more than one indication of legislative intent or used more than one factor in their analysis. For example, in *Stifflear v. Bristol-Myers Squibb*, 931 P.2d 471 (Col. Ct. App. 1996), the court construed its antitrust statute to preclude direct actions by indirect purchasers because: (1) the Colorado statute was modeled on the federal statute; (2) the Colorado Supreme Court had previously held that the state act should be interpreted consistently with federal antitrust law; (3) a 1992 re-enactment directed Colorado courts to use as a guide federal court interpretations of federal law; and (4) the same re-enactment only partially repealed the indirect purchaser preclusion by giving standing to governmental entities injured "either directly or indirectly." The court also shared the same concerns expressed by the Supreme Court in *Illinois Brick* regarding disincentives to private

enforcement and difficulties in apportioning alleged overcharges. *Id.* at 476; *see also Davidson v. Microsoft Corp.*, 143 Md. App. 43, 792 A.2d 336, 341 (Md. Ct. App. 2002) (holding that *Illinois Brick* applied in that state because of language in the Maryland statute that directed the courts to "be guided by federal court interpretations of federal antitrust statutes," because of prior cases using federal authority in interpreting the Maryland antitrust statute, and based on the legislative history of the act, including adoption of a right for only governmental indirect purchasers to sue); *Elkins v. Microsoft*, 817 A.2d 9, 18 (Ver. 2002) (discussing the holdings of various states under their antitrust statutes and their consumer protection statutes). *Sherwood v. Microsoft Corp.*, 2003 Tenn. App. LEXIS 539 (Tenn. Ct. App. July 31, 2003) (allowing indirect purchaser actions under Tennessee's antitrust statute).

{20}    Defendants argue that since the Court of Appeals' decision in *Hyde*, the North Carolina Antitrust Act has been amended in a manner that "evinces a clear legislative intent to make North Carolina antitrust law consistent with federal law." On June 3, 1996, the General Assembly ratified a bill entitled *An Act to Revise the Statutes Regarding Antitrust Law to Ensure That These Provisions Are Internally Consistent and Consistent With Federal Antitrust Laws.* Act of June 3, 1996, Ch. 550, Senate Bill 843 ("1996 Amendments"). These Amendments became effective on October 1, 1996.

{21}    First, the 1996 Amendments were enacted after *Illinois Brick* was decided. Had the legislature desired to enact an *Illinois Brick* repealer law, this would have been the ideal opportunity. Instead, the 1996 Amendments did not directly address indirect purchaser standing, choosing only to add language to North Carolina law that mirrors the monopolization language used in the federal Sherman Act. *Id.;* N.C.G.S. § 75-2.1 (2001).

{22}    Second, the 1996 Amendments were passed after *Hyde* had been briefed and argued to the Court of Appeals and were not effective until after the Court of Appeals had reached a decision. Thus the Court of Appeals did not have the benefit of the Legislature's confirmation that it is their continued intent to have North Carolina antitrust law interpreted as consistent with Federal antitrust law.

{23}    In 1995, the Section of Antitrust Law of the American Bar Association published a Report of the Indirect Purchaser Task Force outlining proposed legislative changes to address the "indirect purchaser problem." *Report of the Indirect Purchaser Task Force: Section of Antitrust Law American Bar Association,* 63 ANTITRUST L.J. 993 (Spring 1995). The report stated that the results of state *Illinois Brick* repealer laws are that:

> (1) The full amount of the overcharge, trebled, can be recovered by (i) direct purchasers who sue under federal law; (ii) the customers of those direct purchasers who sue under state law; and (iii) under most state *Illinois Brick* repealers, by indirect purchasers at every other stage of distribution down the line.
>
> (2) The overcharge that an indirect purchaser can have trebled may be a multiple of the overcharge to the direct purchaser because indirect purchasers can claim that their seller's markups on the original overcharge are also inflated because of that overcharge.
>
> (3) The direct purchaser cases can be prosecuted in federal court and the indirect purchaser cases can be prosecuted in state court(s). Indeed, the Supreme Court seemed to encourage that kind of multiple litigation in *ARC America* by broadly hinting to federal courts that they utilize pendent jurisdiction principles for state law indirect purchaser claims.
>
> (4) The results in the direct and indirect purchaser cases need not be

consistent. The overcharge which is treated as the direct purchaser's in the federal court can be treated as the indirect purchaser's in the state court. In fact, if indirect purchaser cases are brought in several state courts, there may be inconsistencies in those decisions.

Thus, defendants in horizontal price-fixing cases face not only the burden and expense of multiple treble-damage lawsuits, but also enormous potential liability -- not just three, but multiples of three times the overcharge, if a lay jury finds liability. Few companies can afford to "roll the dice" on a jury verdict when the exposure is that high, no matter how innocent they believe they are.

Additionally, the current law turns judicial economy -- the principal reason for the decisions in *Hanover Shoe* and *Illinois Brick* -- on its head. Federal *and* state judicial resources are finite and precious. It makes little sense to permit, much less encourage, multiple litigation in federal and state courts. It makes even less sense to permit inconsistent judgments as to who bore the overcharge.

*Id.*

{24} It is precisely because any rational corporate defendant would prefer to avoid "rolling the dice" on a jury that this issue has not been before the North Carolina Supreme Court for review and clarification of North Carolina's antitrust statute. Defendants will settle even non-meritorious claims rather than risk "multiples of three times the overcharge in damages."

{25} Defendants argue that the rationale behind *Illinois Brick* should apply in North Carolina and that given the opportunity to review our antitrust statute, our appellate courts would overrule *Hyde* in light of subsequent legislative action. Furthermore, as defendants pointed out in their motion to dismiss, the *Illinois Brick* analysis is "fully borne out by the circumstances of this case." Direct purchaser suits against these defendants have been filed under federal antitrust law and consolidated in federal multi-district proceedings in Washington, D.C. *In re Vitamin Litigation,* MDL No. 1285 (D.D.C. (TFH)). Counsel for a nationwide class of direct purchasers have sought to recover the full amount of the same conspiratorial overcharge alleged in this case. As in *Bruggers*, this case directly raises the issue of multiple liability, which did not arise in *Hyde.*

{26} The Court also faces the same unresolved issues it faced in *Bruggers*, namely apportioning alleged overcharges among those in the chain of distribution and the risk of multiple liability. Whether overcharges were passed on to plaintiffs presents difficult evidentiary issues. Plaintiffs purchased vitamins to feed their livestock and then sold that livestock. Whether the alleged increase in the price of vitamins was passed on when they sold their livestock presents an exceedingly difficult issue of proof.

{27} Moreover, as this Court pointed out in *Bruggers,* "[t]he existence of indirect purchaser standing spawns additional significant issues which have never been addressed by the appellate courts or the General Assembly." *Bruggers*, 2000 NCBC 3, at ¶ 18. For example, who will bear the burden of proof in establishing that each plaintiff absorbed any alleged overcharge, rather than passing it on to his, her or its own customers? What proof will individual plaintiffs need to present with respect to the origin of the products they consumed or purchased? If the question of allocation of the alleged increase along the chain of distribution creates conflicts among potential plaintiffs, will the Court be required to sever those actions?

**Interlocutory Appeals**

{28} "An order is interlocutory if it does not determine the issues but directs some further proceeding preliminary to the final decree." *Waters v. Qualified Personnel, Inc.*, 294 N.C. 200, 240 S.E.2d 338 (1978); *Blackwelder v. State Dep't of Human Resources*, 60 N.C. App. 331, 299 S.E.2d 777 (1983); *Heavener v. Heavener*, 73 N.C. App. 331, 326 S.E.2d 78, *cert. denied*, 313 N.C. 601, 330 S.E.2d 610 (1985). "The rule against interlocutory appeals seeks to prevent fragmentary, premature and unnecessary appeals by allowing the trial court to bring a case to final judgment before its presentation to the appellate courts." *CBP Resources Inc. v. Mountaire Farms of North Carolina, Inc. et al.,* 134 N.C. App. 169, 517 S.E.2d 151 (1999). However, an interlocutory appeal is permissible "if the trial court's decision deprives the appellant of a substantial right which would be lost absent immediate review." *Bartlett v. Jacobs,* 124 N.C. App. 521, 523, 477 S.E.2d 693, 695 (1996), *disc. rev. denied,* 345 N.C. 340, 483 S.E.2d 161 (1997); N.C.G.S. §§ 7A-27 and 1-277 (2002).

{29} The issues present in this case, along with the central issue of indirect purchaser standing, are eliminated by the federal approach but cannot be avoided if indirect purchaser standing exists. Furthermore, indirect purchaser standing significantly affects the public interest and involves legal principles of major significance to the jurisprudence of the state that have not been addressed by the North Carolina Supreme Court. Our Court of Appeals should have the opportunity to review its holding in *Hyde* in light of subsequent legislative changes to N.C.G.S. § 75-16 and federal interpretation of the federal antitrust laws.

{30} There is no just reason to delay appeal of this order, and immediate appeal will promote judicial economy. A determination that North Carolina either will or will not allow indirect purchaser standing may immediately end the litigation, as plaintiffs could consequently no longer have standing.

**Conclusion**

{31} The decision of the Court of Appeals in the *Hyde* case is controlling authority in this state on the question of indirect purchaser standing under N.C.G.S. § 75-16. This court is bound by that decision. It is difficult to interpret the language of the 1969 amendment to the statute as doing anything other than establishing indirect purchaser standing. However, this case raises the specific issues of concern to the United States Supreme Court in *Illinois Brick*. The General Assembly, in the 1996 Amendments, did not provide any statutory guidance on how to deal with apportionment and pass-through issues or multiple liability questions. There is no guidance in the appellate decisions because those issues were not before the court in *Hyde*.

{32} It is therefore ORDERED, ADJUDGED and DECREED that:

1. Defendants' motion to dismiss for failure to state a claim upon which relief may be granted is DENIED.

2. Denial of this motion is suitable for immediate interlocutory appeal or a petition for discretionary review.

3. A ruling on defendants' motion to dismiss for lack of personal jurisdiction is deferred until such time as either the time for appeal from this order has expired or the North Carolina appellate courts have ruled on the certified interlocutory appeal.

{33} SO ORDERED this the ____ day of August 2003.